## Case No. 11,771.

RICHARDS, et al. v. CHESAPEAKE & O. R. CO.

[1 Hughes, 28; 4 Am. Law Rec. 469; 1 Law & Eq. Rep. 104.][1]

Circuit Court, E. D. Virginia. Jan. 3, 1876.

RAILROAD COMPANIES—APPOINTMENT OF RECEIVER.—INTEREST OF CREDITORS—MORTGAGES.

1. Secured creditors cannot dictate who shall be appointed a receiver. He is the hand of the court, and the interest of creditors of every grade will be considered in making the appointment.

[Cited in Taylor v. Life Ass'n of America, 3 Fed. 469.]

[Cited in Jones v. McPhillips, 82 Ala. 102, 2 South. 471.]

2. A bill will be dismissed as to a subsequent mortgagee to the mortgagee in suit, he having been made a party to the litigation, and it being found that that hindered or defeated the suit.

3. Where trustees under a mortgage, of whom it is alleged in the bill for a foreclosure that they had refused to proceed to realize on the security, apply to come in and have been admitted as complainants in the bill, they must control the proceeding.

In equity. The Chesapeake and Ohio Railroad Company, a consolidated company, the component parts of which were the Virginia Central Railroad Company, the Blue Ridge Railroad Company, and the Covington and Ohio Railroad Company, became insolvent. There were secured and unsecured creditors of the road. The secured debts are: A mortgage, dated April 1st, 1850, of the Virginia Central Railroad Company of all its property, to the board of public works of Virginia for $100,000, to secure the payment of certain bonds of the company which are due and unpaid. A mortgage, dated June 2d, 1854, to James Lyons, William H. McFarland, and Hugh W. Fry, of the same company, of all its property, to secure the payment of other bonds of the company, amounting to $1,500,000, which are also due and unpaid. A mortgage, dated February 6th, 1866, of the same company, of all its property, to John B. Young and Robert R. Howison, to secure the bonds of the company for $300,000, with interest at eight per cent. per annum, which remain unpaid. A mortgage, dated October 1st, 1868, of all the railroads which form the Chesapeake and Ohio Railroad Company, to William Butler Duncan, Philo C. Calhoun, William Orton, and Matthew F. Maury (now deceased), to secure certain liabilities, in amount unascertained, of the Virginia Central Railroad Company. A mortgage, dated January 15th, 1870, executed to William Butler Duncan and Philo C. Calhoun, the trustees complainant, by the Chesapeake and Ohio Railroad Company, for $15,000,000, to secure the bonds

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission. 4 Am. Law Rec. 469, contains only a partial report.]

now in' suit. And a mortgage dated subsequently to January 15th, 1870, executed to Philo C. Calhoun and William K. Kitchen, of all the property mentioned in the last preceding mortgage, and embracing also that portion of the line of road extending from Richmond down to the peninsula of the York and James rivers, and the branch railroad from Scary creek, in West Virginia, to the mouth of the Kanawha, and the bridge to be erected over the Ohio at Huntington.

Before WAITE, Circuit Justice, and BOND, Circuit Judge.

BOND, Circuit Judge. On the 4th day of October, 1875, the complainants filed their bill in this court, in behalf of themselves and all others in like interest, alleging that they were the holders of certain of the six per cent. coupon bonds issued by the defendant, to the extent of $15,000,000, for the completion of their road from Richmond to the Ohio river; that the payment of these bonds, and the interest thereon accruing, was secured by what was claimed to be the first mortgage on said road, which mortgage was duly executed by defendant on the 15th day of January, 1870, and conveyed to William Butler Duncan and Philo C. Calhoun, citizens of New York, as trustees, all the franchises and property of said company then constructed, or thereafter to be constructed or acquired by the defendant. The bill alleged that the company had made default in the payment of the interest on these bonds since the 1st day of November, 1873, and that complainants had required the trustees, Duncan and Calhoun, to foreclose the mortgage above referred to for the benefit of the bondholders named therein, with the proper offer of indemnity to them for expenses, and that they had failed and refused to institute proceedings therefor. The bill concluded with an allegation of the total insolvency of the defendant, and with the ordinary prayer for an injunction and receiver, restraining the trustees and defendant corporation from disposing of the mortgaged premises without the order of this court, and for a sale and distribution of the proceeds among the bondholders, according to their respective priorities. This bill, properly verified, being exhibited, the court ordered the motion for an injunction and receiver to be set for hearing on the 22d day of October following, provided a copy thereof, and of that order, was served on the defendant on or before the 7th day of October, 1875, and in the meantime, until the hearing of the motion, restrained the defendants from disposing of the mortgaged property, except in the ordinary way of the business of transportation of said company. Prior to the hearing of these motions, however, the complainants, by petition, brought to the knowledge of the court the fact that a large number of judgments had been obtained against the company, and that executions had been issued thereon, and

that the sheriffs of the various counties through which the road passed had seized portions of the mortgaged property, and were about to seize and sell other portions, and they asked that to prevent immediate and irreparable injury to the mortgagees, a temporary receiver might be appointed, which was done accordingly, and Henry Tyson was so appointed.

Prior to the 22d day of October, the day set for the hearing of the motion for an injunction and permanent receiver, the defendant trustees (Duncan and Calhoun) filed a petition to the court, stating their surprise at the filing of the bill, alleging that no adequate demand to foreclose had been made upon them, and asked that they, being the proper persons to conduct the suit of foreclosure, might be allowed to become complainants and not defendants therein, which request, with the consent of all parties, was allowed. The trustees then, with a large majority of their cestuis que trust and other creditors, together with the defendant company, asked the court in advance of the day fixed for the hearing of the motion therefor, to appoint Williams C. Wickham, the vice-president of the defendant company, receiver. All parties agreed that a receiver should be appointed. The court, however, refused to take any action relating to the appointment until the 22d day of October, the day fixed and advertised for, the hearing of that matter. On this last-named day the defendant company appeared, and filed an answer to the rule to show cause why an injunction should not be awarded and a permanent receiver appointed. The answer admitted the insolvency of the company, and asked again that Williams C. Wickham might be appointed permanent receiver. But the answer disclosed the fact to the court, not as yet stated in the proceedings, that the mortgage to Duncan and Calhoun, under which complainants claimed, and which in the bill is alleged to be a first mortgage, is not so in fact. This answer alleges it to be the fourth, while other exhibits now filed show it to be the fifth mortgage in point of time. But the court, notwithstanding the almost unanimous consent of parties, refused to appoint Wickham, and it still adheres to the conclusions then formed.

It appeared to the court then, as it does now, that the Chesapeake and Ohio Railroad Company is overwhelmed with debt, secured and unsecured. How it became so it is not for us to determine. But the court, when called upon to appoint a receiver for a corporation totally insolvent, who is to be the mere servant of the court, upon whose fidelity and ability to manage during the pendency of the suit the property intrusted to him, the court must rely, ought not, and ought not to be expected, to appoint a person under whose charge and control the resources of the road had been exhausted, its property seized upon execution, and the necessity for

a receiver brought about. The receiver is not the receiver of the bondholders or secured creditors. He is the mere hand of the court. The unsecured creditors, whose chances of a dividend are remote, have a deep interest in knowing that the road, while its assets are being marshalled, and its creditors, their claims and priorities ascertained, is free from the control of those whose administration of its affairs ended in bankruptcy. Upon the refusal of the court to remove its receiver, Duncan and Calhoun, trustees under the so-called first mortgage, who had, as before stated, by general consent become complainants, filed their amended bill. In this bill it is set out that the Chesapeake and Ohio Railroad Company is what is known as a consolidated company. Its component parts were the Virginia Central Railroad Company, the Blue Ridge Railroad Company, and the Covington and Ohio Railroad Company. The bill further states that on the 1st day of April, 1850, the Virginia Central Railroad Company executed a mortgage to the board of public works of Virginia of all the property of said company to secure the payment of certain bonds, amounting to one hundred thousand dollars, which are due and unpaid. And that the same company, on the 2d of June, 1854, executed to James Lyons, William H. McFarland, and Hugh W. Fry, another mortgage of all its property to secure the payment of other bonds of said company, amounting in all to one million five hundred thousand dollars ($1,500,000), which are also due and unpaid. And that, on the 6th day of February, 1866, the same company executed another mortgage to John B. Young and Robt. R. Howison of all its property, to secure the bonds of the company, amounting to three hundred thousand dollars, with interest thereon at the rate of eight per cent. per annum, which remain unpaid. And the bill further states that a fourth mortgage was executed by the Chesapeake and Ohio Railroad Company on the 1st day of October, 1868, to William Butler Duncan, Philo C. Calhoun, William Orton, and Matthew F. Maury (now deceased), of all the railroads which had gone to form the said Chesapeake and Ohio Railroad Company, from its terminus in Richmond to the Ohio river, together with all its franchises and property, to secure certain liabilities, in amount unascertained, of the Virginia Central Railroad Company. And that afterwards, on the 15th day of January, 1870, was executed the mortgage to these two trustees, complainant, by the defendant company, being the fifth in point of priority of time, to secure the payment of the $15,000,000 bonds now in suit. And that subsequently to this the said defendant executed another mortgage to Philo C. Calhoun and William K. Kitchen of all the property mentioned in the last preceding mortgage, and embracing also all that portion of the line of the road extending from Richmond down to the peninsula of the York and James rivers, and the branch railroad from Scary creek, in West Virginia, to the mouth of the Kanawha, and the bridge to be erected over the Ohio at Huntington. Orton, a co-mortgagee in the fourth mortgage with these complainant trustees, is a citizen of New York, and, so far as this suit is concerned, has an interest adverse to them. And Kitchen, who is a co-mortgagee with the complainant Calhoun in the mortgage of the 1st October, 1872, is likewise a citizen of New York, and being a subsequent mortgagee, holds an interest adverse to his co-trustee, Calhoun, in this suit.

Under these circumstances, the Chesapeake and Ohio Railroad Company, the defendant company, moves to dismiss the suit for want of jurisdiction, because Kitchen and Orton, who are parties defendant to the bill, are citizens of the same state with the complainants. So far as this motion is concerned, if it were resisted on the part of the trustees, we should have little difficulty in disposing of it. Kitchen, though a proper, is not an indispensable, party to the suit, and if it appeared to the court that it would be advantageous to the interest of the bondholders in this suit to proceed without him, he being a subsequent mortgagee, the court might, by the exercise of the ordinary powers of courts of equity having control of suitors, dismiss the bill as to him, and proceed, and if the trustees who are here complainant, thought it best for the interest of their cestuis que trust to sell their mortgage debt, they might ask the court to strike out Orton's name also, and proceed to dispose of their bare interest in the road as mortgagees. So soon, however, as the trustees in this suit were allowed by the complainant bondholders, who first invoked the aid of the court, to become complainants here, they became charged with the conduct of the cause. The only standing the original complainants had in court arose from the allegation in their bill that the trustees in their mortgage were derelict. When the trustees came into court, denied the charge of unfaithfulness, and asked to do what the complainants alleged they ought to do, but were unwilling to do, and the complainants consented that they should become complainants instead of defendants, in order that they might proceed, they became masters of the suit.

And now come these trustees also, and ask the court that the bill may be dismissed, and that they may be allowed to proceed in the courts of the state in which they have already commenced proceedings, where, as they allege, certain difficulties in regard to jurisdiction which arise here will not be in the way of their proceedings. They allege that whether the court has jurisdiction or not, as the defendants say it has not, to sell the interest they hold in the railroad by virtue of their mortgage, it would be very

unwise to do so; that in their judgment all the prior as well as subsequent incumbrancers should be made parties to the proceedings in order to realize the full value of the mortgaged premises. But they allege this cannot be done in this court, because Orton, who is trustee under the fourth mortgage, is a citizen of New York with them, and because Kitchen, trustee under a subsequent mortgage, is likewise a citizen of New York. And they file here the record of their proceedings to foreclose in the state court, and ask that they may be allowed to proceed in that forum and not in this. And all the bondholders under complainants' mortgage either agree with them or acquiesce in their request, with the exception of a few who hold bonds to the amount of about $200,000.

Under these circumstances, for the court to determine that the trustees shall proceed here and not elsewhere, there being no charge of duplicity or fraud on their part, would be to set up the opinion of the court as to what the best interests of these cestuis que trust are against those of themselves and of the trustees who are legally charged with the care of those interests. But we think it is plain, from the papers exhibited here, that it would not be proper to proceed in this cause without making some, at least, of the prior and subsequent mortgagees parties. The mortgage to Duncan, Calhoun, and Orton, of the 1st of October, 1868, to secure $10,000,000, is still outstanding, and embraces all the property of the Chesapeake and Ohio Railroad, but what is the actual indebtedness thereunder is not known, and cannot be ascertained except by a legal proceeding. How could a purchaser at a sale decreed by us foreclosing this mortgage ascertain before bidding what the value of the property to be sold was when there might be an incumbrance on it of $10,000,000, or, as is claimed, of not more than $10,000? Would it be for the interest of these complainants to sell unless they had first put themselves in position to inform purchasers what was the actual amount of prior incumbrances on the railroad? This cannot be done without making Orton a party to the suit, and the objection to that here is that he is a citizen of the same state with the complainants. It is urged, however, that Calhoun and Duncan are co-trustees with Orton, and that the court having them already before it need not require the third trustee to be a party. But these co-trustees object to represent both classes of cestuis que trust because their interests are adverse, and urge that Orton is the only trustee who is charged solely with the interests of those claiming under the ten million mortgage. It would not be proper for the court to deprive those mortgagees of their sole, peculiar, personal representative.

But the complainants claim that it is necessary also to make Kitchen, who is trustee under a subsequent mortgage, a party, for the reason that while that mortgage is subsequent to that of complainants, on the part of the .Chesapeake and Ohio Railroad, extending from Richmond to the Ohio river, it is claimed to be a first mortgage on the part of that road extending from Richmond towards tide-water. The trustees assert that while in their judgment, under the statutes of Virginia, their mortgage covers this part of the property of the defendant company, also, before any sale it is necessary that these conflicting claims of priority of lien should be settled. They state that in their judgment it would not be for the best interests of their mortgagees to sell a portion of the road only, but to sell it as an entirety it is necessary that Kitchen should be a party to this suit, which cannot be because he likewise is a citizen of New York. But the bondholders, who object to the dismissal of the bill ask leave, if the court allow the motion to dismiss, to file a new bill in this case, making the proper parties, and relating back to the time of filing the present bill. A fatal objection to this request is that now that the trustees have undertaken by legal means to foreclose this mortgage, no bondholder has a right to proceed in his own name to foreclose. He can ask the aid of a court of equity only on the ground of unfaithfulness, neglect, or inability on the part of the trustees. Upon due consideration, therefore, the court will make an order directing the receiver to settle his accounts up to a day named therein, and to make a report thereof to the court up to that date, whereupon he will be discharged, and the complainants be allowed to dismiss these proceedings and prosecute those already commenced in the state court.