# *Ex Parte* Jones.

*Application for Mandamus to Chancery Court, in matter of Petition under Bill by Assignee for Creditors of Insolvent Bank.*

1. *Bill of exchange, not assignment of funds in hands of drawee.* When a bank draws a bill of exchange in favor of a depositor, on a person who has funds in hand to meet it, this does not, without more, amount to an assignment or appropriation of any particular funds, so as to vest the property therein in the payee as against a subsequent assignee of the bank for the benefit of creditors.

2. *Fraud of insolvent bank, drawing bill in favor of depositor; right of payee to rescind.*—When an insolvent bank draws a bill of exchange, in favor of a depositor, on a business correspondent with whom it has funds on deposit, and the bill is dishonored on presentation, because of an intervening assignment for the benefit of creditors made by the insolvent bank, the payee can not claim to rescind the contract, and be remitted to his original *status* as a depositor, when it is not shown that any intentional fraud or deception was practiced on him, nor that the bank had no reasonable expectation that the bill would be honored on presentment.

3. *Voluntary assignment by bank, drawer of bill; right of payee to rescind.*—When a party disables himself, by his own voluntary act, to comply with his contract, the other party may treat it as rescinded, and claim to be placed *in statu quo*, when the contract relates to property, which remains *in specie*, unaltered and undisposed of; but this principle can not be invoked by a depositor in an insolvent bank, because a bill of exchange, drawn in his favor by the bank, is dishonored in consequence of a subsequent assignment by the bank for the benefit of its creditors; no intentional fraud or deception being shown, and no want of funds by the drawee, when the bill was drawn.

The petitioners in this case, Mrs. Eliza A. Jones and Marcus Rosmanick, filed their respective petitions in the Chancery Court of Mobile, in a cause therein pending, wherein Winston Jones, as assignee and trustee for the benefit of the creditors of the Bank of Mobile, was complainant, and the said bank and its creditors were defendants; claiming to be creditors of said

[Ex parte Jones.]

bank as depositors, and to have the right to share in the distribution of the assets in that capacity. The assignee demurred to the petitions, and the chancellor sustained his demurrer, and dismissed the petitions. The petitioners now apply to this court for a *mandamus*, to revise the action of the chancellor, and to compel the assignee to recognize them as depositors; and a transcript of the proceedings had on their petitions is made an exhibit to their application. The material facts are stated in the opinion of the court.

J. L. & G. L. SMITH, for the petitioners.—When the seller has been induced to part with his goods by the fraud of the purchaser, whether by misrepresentation or concealment of material facts, he may rescind the sale, and reclaim the goods. *Loeb & Brother v. Flash Brothers*, 65 Ala. 526; *Loeb & Brother v. Peters*, 63 Ala. 249; *Donaldson v. Farwell*, 3 Otto, 633. The principle is of very general application, and has been held to apply to the giving of a check.—*Burns v. City Nat. Bank*, 68 Ala. 278. The principle is, that whenever a fraud has been practiced on a party, by which he was induced to enter into a contract, he may rescind the contract, on discovering the fraud, whenever both parties can be placed in *statu quo*. As to the character of frauds which will justify the rescission of a contract, see *Kennedy v. Kennedy*, 2 Ala. 593; *Nelson v. Wood*, 62 Ala. 176. Even where there was no actual fraud, if one party disables himself from performing his part of the contract, the other may rescind.—*Pharr & Beck v. Bachelor*, 3 Ala. 245; *Pacific Guano Co. v. Mullen*, 66 Ala. 589; Parsons on Contracts, 678, 6th ed. Each of these principles applies to the case of these petitioners. The bank was insolvent, and knew itself to be insolvent; while the petitioners were ignorant of that fact, and would not have taken its worthless exchange if they had known it. This was a fraud, which authorized them to rescind the contract on discovering it, and claim to be remitted to their original position as depositors.—Authorities first above cited. But the bank, notwithstanding its insolvency, had money to its credit with the drawees; and the bills would have been paid on presentation, but for the voluntary assignment of the bank, whereby it prevented performance. This also, under the authorities last above cited, gave the petitioners the right to rescind the contracts, and to claim restoration to the position of depositors.

STONE, C. J.—Within a short time before the Bank of Mobile assigned all its property and effects to Jones for the benefit of its creditors, it sold exchange to Mrs. Eliza A. Jones

[Ex parte Jones.]

and the other petitioners, which was not presented until after the bank's assignment was made, and was not paid. The funds with which this exchange was purchased had been on deposit with the said Bank of Mobile, and were checked out in the purchase of the exchange. All the exchange, except that in favor of Rosmanick, was what is called domestic exchange, being drawn on the bank's New York correspondent. Rosmanick's bills were drawn on Williams, Deacon & Co., bankers, of London, England. The correspondent bank in the city of New York, on which said domestic exchange was drawn, had ample funds belonging to the Bank of Mobile, with which to pay all said bills drawn on it, and would have done so, had not the payment been countermanded, as hereafter shown. Williams, Deacon & Co. had no funds belonging to the Bank of Mobile; but it is not averred that they would not have accepted and paid the Rosmanick bills, had not the Bank of Mobile, by its assignment to Jones, rendered itself insolvent. Nor is it averred that the Bank of Mobile did not, when it issued the bills, have just grounds for believing they would be accepted and paid by Williams, Deacon & Co., on presentation. It is averred that, when the assignment was made to Jones, he notified the New York correspondent bank not to pay said bills, and on his order the bank's funds on deposit there were placed to his credit as assignee. Mrs. Eliza A. Jones, and the other several holders of said dishonored bills of exchange, filed their petitions in the suit of Winston Jones, assignee, against the Bank of Mobile, and therein set forth substantially the foregoing state of facts. They prayed relief in three alternate respects, to be stated hereafter. There was a demurrer to the petitions, and the chancellor held them insufficient.

1. The first form of relief prayed is rested on the assumption, that by giving the several drafts to its customers, the Bank of Mobile had assigned and set apart so much of its New York deposit as was necessary to meet the several drafts, and such moneys thereby, and without more, became the property of the drawees of the bills. This position, as we understand it, is abandoned in the argument. It is manifestly untenable. *Sands v. Matthews*, 27 Ala. 399 ; *National Commercial Bank v. Miller*, at present term ; Morse on Banking, 2d ed., 29, 302.

2. The second alleged ground of relief is, that the bank, when it issued these bills, was insolvent, and, by withholding knowledge of that fact from its customers, induced them to purchase its exchange, and pay their money for it. This, it is contended, was a fraud on its customers, which arms them with the option of rescinding the contracts ; and electing to do so, that they are thereby remitted to their former *status*—that of depositors in the bank. The averments of the petitions do not

[Ex parte Jones.]

bring the cases within this principle. No intention or deception is averred, nor is it inferable from the facts stated that, at the time the exchange was sold, the bank did not have the means and the confident expectation that the drafts would be honored on presentation. The petitions fail to make a case for relief within this principle.—*Loeb v. Flash*, 65 Ala. 526; *Loeb v. Peters*, 63 Ala. 243; *City National Bank v. Burns*, 58 Ala. 267; *Donaldson v. Farwell*, 93 U. S. 631.

3. The third ground relied on is, that when the bank sold the exchange, it had the means and ability to comply with its contracts, and could have done so, if it had not, by its own voluntary act, deprived itself of the power to comply. This, it is claimed, was a breach of contract on the part of the bank, which absolved the other contracting parties, remitted them to their former rights, and authorized them to treat the contracts as never having had an existence.

There can be no question, that the bank of Mobile, by its assignment, disabled itself to comply with its contract, and that it thereby armed the drawees of the bills of exchange, whose dishonor was caused thereby, with power to treat the contracts as rescinded.—2 Parsons on Contr., 6th ed. 678; *Pac. Guano Co. v. Mullen*, 66 Ala. 582; Anson on Contr. 273. But, what is the result of such rescission? If property had been the subject of contention, and remained in specie, unaltered and undisposed of, the rights consequent on rescission are, that the parties shall be placed in *status quo*, if demanded. Can that be done, when money has been paid, and the claim is to have it restored?

As we have said above, there is no averment in the petitions which tend to show intentional fraud or deception, when the bills of exchange were issued by the bank; and in the absence of such averment, we must presume the bank's intention and expectation, when it sold the exchange, were that the drafts would be honored and paid on presentation. From all that appears, such would have been the result, if they could have been presented before the assignment was made. There was, then, a time when the money was withdrawn, and rightfully withdrawn, from its *status* as a deposit—when it ceased to be a deposit, and did not constitute a debt against the bank. The bank, during that interval, owed nothing on its account, as a deposit. Money, thus used as currency, has no ear-mark, and can not become the subject of a trust *ad rem*. It created a simple new debt, and must share the fate of other general debts and legal liabilities. Such is the general result, when money has been paid on a contract, which is afterwards rescinded.—2 Benj. on Sales, § 1126; *Martindale v. Smith*, 1 Q. B. 365; 1 Whar. Contr. § 282.

Application for *mandamus* denied.