# Jones *v.* McPhillips.

*Bill in Equity by Creditors of Insolvent Bank, asking Removal of Assignee, Appointment of Receiver, and Administration of Trust.*

1. *Assignment in trust for creditors; when equity will take jurisdiction, at instance of beneficiaries.*—Under a general assignment for the benefit of creditors, a court of equity will not assume jurisdiction, at the instance of some of the beneficiaries, to remove the trustee, or to interfere with his administration of the trust, unless the complainants show incompetency, negligence, or other misconduct on the part of the trustee, complication in the accounts, or conflicting liens and equities, which require the instructions of the court, and the refusal of the trustee to ask such instructions, whereby injury may result to the trust estate, or to the parties complaining.

2. *Amended bill; takes effect when.*—As a general rule, an amendment of a bill, when properly allowed, takes effect as of the filing of the original bill; but this legal fiction is indulged in furtherance of justice, and is never allowed to prejudice intervening equities, unsettle vested rights acquired in good faith, nor otherwise work an injustice; nor will it be indulged when supplemental matter, occurring after the filing of the original bill, is brought in by amendment, as may be done under our practice.

3. *Assignment in trust for creditors; rival bills for settlement by trustee and beneficiaries.*—Where some of the creditors of an insolvent bank filed a general creditors' bill, asking the removal of the trustee appointed in a voluntary deed of assignment, the appointment of a receiver in his stead, and the administration and settlement of the trust under the orders of the court, but failed to allege facts sufficient to entitle them to relief ; after which, the trustee also filed a bill, alleging complicated accounts, conflicting equities, &c., and asking the instructions of the court in the administration and settlement of the assignment; *held*, that a subsequent amendment of the first bill, alleging the same conflicting equities, &c., as in the bill by the trustee, most of which had been already settled in that suit, was unnecessary, and should not be allowed.

4. *Estoppel en pais by judicial proceeding or pleading.*—When a party has defeated one action, by alleging or pleading a particular state of facts, he can not be heard to deny or disprove these facts in defense of another action; but, when a trustee in a deed of assignment for the benefit of creditors has defeated a bill filed against him by one of the

[Jones v. McPhillips.]

creditors, by pleading a general creditors' bill previously filed against him in another court, he is not thereby estopped from defeating that suit on its merits.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed on the 9th July, 1884, by James McPhillips and others, depositors and creditors of the Bank of Mobile, on behalf of themselves and other creditors, against the said bank as a corporation, and against Winston Jones as trustee, or assignee, in a deed of assignment executed to him by said bank, on the 8th July, 1884, for the benefit of its creditors; and sought to remove the assignee, to have a receiver appointed, and the trust administered and settled under the orders of the court. The defendants demurred to the bill, specifying numerous causes of demurrer, all of which were overruled by the chancellor; but, while he refused to appoint a receiver, he made a decretal order assuming jurisdiction of the trust. The assignee appealed from this decretal order, and here assigned as error the overruling of the several demurrers, and the order assuming jurisdiction of the trust; on which appeal, the decree of the chancellor was reversed by this court, but the cause was remanded, in order that the complainants might have an opportunity to amend their bill, if they desired to do so.—*Jones v. McPhillips*, 77 Ala. 314–23. In the meantime, on the 29th August, 1884, the assignee himself filed a bill in the same court, against the bank and its creditors; asking that the court would take jurisdiction of the trust created by the assignment, instruct him in the discharge of his duties, require the creditors to come in and propound their claims, settle all conflicting liens and equities, and administer the assets as required by law and equity. On the 10th February, 1885, the complainants in the first bill made a motion for the consolidation of the two causes; and the chancellor, while overruling the motion, "ordered that, hereafter, the two causes will be heard and considered at the same time and together, and that any order, decree, or other action of the court in one of them, shall be held to be taken notice of in the other, whether the same shall be preparatory to a final decree, enforcing the same, or a final decree settling the equities." The principal contest, under the bill filed by the assignee, was with Williams, Deacon & Co., bankers in London, who asserted a prior lien on a great part of the assets of the bank, and filed an answer and crossbill, stating therein particularly the facts on which their claim was founded.—See the case reported in 77 Ala. 294–

[Jones v. McPhillips.]

309, and in 79 Ala. 119–32. There were, also, several other litigated claims, one of which was brought to this court. *Ex parte Jones*, 77 Ala. 330.

On the 1st August, 1885, McPhillips *et al.*, the complainants in the bill first filed, asked leave to amend their bill in several particulars ; and the register, on the 3d August, allowed the amendments, against the objections of the assignee. The amendment alleged and charged, among other things, that Jones, the assignee, was a director of the bank for a year or more prior to its insolvency, and actively participated in the mismanagement which resulted in its financial ruin, voting with the majority for the election of Danner as president, and for the increasing loans to him which caused the ruin of the bank ; and it repeated the charges as to the youth of the trustee, his inexperience, and the inconsiderable value of his property as compared with the assets belonging to the bank. The amendment alleged, also, the various conflicting liens and equities asserted by Williams, Deacon & Co., and other creditors, the great number of the creditors, their residences in various parts of the world, and other facts showing a necessity for the administration of the trust by a court of equity, substantially as those facts had been stated in the bill filed by the assignee. An affidavit to the amendment, made by said McPhillips, was in the usual form, but further stated, " The allegations of said amended bill are of facts existing when the original bill was filed, but which at that time were not available to complainants."

The assignee filed a demurrer to the amended bill, specifying thirty-one grounds or causes of demurrer ; and the bank adopted this demurrer. The assignee filed an answer, also, in which he again stated the facts as in his former bill and answer, and also stated, in substance, that all the controverted matters, except the claim of Williams, Deacon & Co., and one other, had already been determined and settled in the other suit. The chancellor overruled the demurrers, and, on final hearing on pleadings and proof, rendered a decree taking jurisdiction of the trust as prayed, but further added : " And it further appearing that, under a proceeding commenced in this court on the 29th August, 1884, by said trustee, this court took jurisdiction of said trust before the 1st August, 1885, when these complainants first made and filed allegations sufficient to confer jurisdiction on the court, it is therefore ordered, adjudged and decreed, that no action in the administration of the trust be taken in this case, until the further order of this court pending its administration in said case begun on said 29th August, 1884. The

[Jones v. McPhillips.]

appeal is sued out by the assignee, who here assigns as
error the overruling of the demurrers to the amended bill,
and the decree taking jurisdiction of the trust under the
bill.

GAYLORD B. CLARK & F. B. CLARK, Jr., for the appellants.
(1.)  The amended bill is inconsistent with the original
bill, and makes an entirely new case.—*Ingraham v. Gregg*,
61 Mass. 32; *Williams, Deacon & Co. v. Jones*, 79 Ala. 119.
(2.)  The amended bill shows no ground for the removal of
the trustee, unless the allegations as to his connection with
the mismanagement of the bank's affairs are relied on for
this purpose.   But such allegations, if proved, would show
only error of judgment, which is not ground of removal.
*Godbold v. Bank*, 11 Ala. 191; *Sterling's appeal*, 71 Penn. St.
11; *Turquand v. Marshall*, L. R., 4 Ch. 386; *Arthur v. Gris-
wold*, 55 N. Y. 400,  Moreover, the proof shows that the
settlement with Danner, by which the bank obtained pro-
perty of value almost (if not quite) equal to his large in-
debtedness, was effected mainly through the agency and
exertions of Jones as one of the directors; and since his
appointment as assignee he has paid more than fifty per
cent. in dividends to creditors.   He has given bond, with
ample security, for the faithful administration of the trust,
and is shown to be possessed of a large estate; and the
evidence as to his experience, business capacity and integ-
rity, is very full.   It is not alleged that the trustee has been
guilty of any neglect or misconduct in the administration of
the trust, nor that he has refused to invoke the instructions
of the court; on the contrary, it is shown that he filed a
bill for that purpose, so soon as a necessity became appa-
rent, and that nearly all the matters now set up by amend-
ment, as showing a necessity for invoking the jurisdiction
of the court, have been adjudicated on that suit.   As to
these matters, then, the amended bill is unnecessary, and
its allowance would only double the costs and expenses of
the litigation.   Though the facts, out of which these con-
flicting equities and matters of complication arose, existed
when the original bill was filed, yet the complication and
ensuing litigation have arisen since that time; and the
amendment can not be allowed to relate back, giving retro-
active effect to facts which did not exist, and re-opening mat-
ters which have been judicially determined.   Even if these
matters had not been adjudicated in the other suit, they
would not give equity to the bill, since they do not show
that the trustee has been negligent or derelict.—Jones on
Railroad Securities, §§ 432, 436; *Coal. Co. v. Blatchford*,

[Jones v. McPhillips.]

11 Wallace, 172, 177 ; *Morgan v. Railroad Co.*, 1 Woods, 368–77 ; *Richards v. C. & O. Railroad Co.*, 1 Hughes, 28 ; 2 Fonb. Eq. 172 ; *Freeman v. Cooke*, 3 Ired. Eq. 373 ; *Jones v. McPhillips*, 77 Ala. 314. (3.) No question of estoppel is presented on the pleadings ; and proof without appropriate allegations does not justify relief, any more than allegations without proof.—*Alexander v. Taylor*, 56 Ala. 60. But every element of an estoppel is wanting. The parties are not the same, and no mutuality is shown. The plea was strictly true when filed, and its averments are not now denied. It was in the nature of a plea in abatement, and only remitted the plaintiff in that suit to another forum ; and, as matter of fact, his claim has been preferred and allowed in the suit by the trustee. There was no fraud, no concealment, no misrepresentation ; and the party who now sets up that plea as an estoppel, and at whose instance it was filed, was not injured by it.

HANNIS TAYLOR, *contra.*—(1.) The primary purpose of the amended bill, as of the original, was to procure the administration and settlement of the assignment by the court, and under its instructions and orders ; and an incidental purpose of each was to have the trustee removed, and a receiver appointed in his stead. The amendment only supplies defects which, as this court decided, existed in the original bill, and does not make a new case. (2.) There can be no doubt of the equity of the bill, as amended, under the former decision of the case.—*Jones v. McPhillips*, 77 Ala. 314, and authorities cited in brief for appellee ; also, *Life Insurance Co. v. Pettway*, 24 Ala. 544 ; Mitf. Eq. Pl. 166. It appears, too, that the trustee has himself invoked and obtained the interposition of the court, under a bill which contains, in substance, the same allegations as the amended bill ; thus, not only admitting, but affirming the necessity for a resort to a court of equity. (3.) The amendment relates back to the filing of the original bill, and takes effect from that time ; and the intervening bill of the trustee can not prevent this, since a general creditors' bill is the most appropriate mode of settling the conflicting liens and cross equities.—*Wilson v. Brown*, 12 N. J. Eq. 246 ; *Morton & Bliss v. Railroad Co.*, 79 Ala. 590 ; 2 Hare, 311 ; 2 Paige, 15 ; *Owen v. Dickinson*, Cr. & Ph. 48. The facts brought forward by the amendment, as to the number and variety of the creditors, their conflicting claims and cross equities, existed when the original bill was filed ; the assignee succeeded only to the rights of his assignor, the insolvent bank, and took the property subject to all the liens, equities and

charges then existing against it ; and the rights of creditors are not affected by any thing since done by him.—*Grangers' Ins. Co. v. Kamper*, 73 Ala. 346. (4.) The trustee, having pleaded the pendency of this suit in defense of another bill by one of the creditors, has estopped himself from now attempting to defeat this suit.—Herman on Estoppel, § 285 ; *Dezell v. Odell*, 3 Hill, 215 ; *Thurman v. Fiske*, 30 How. Pr. 397 ; 52 Barb. 152 ; *Laughlin v. Peebles*, Pen. & W. (Pa.) 114 ; 2 Watts & Serg. 101 ; 25 Texas, 578 ; 44 Penn. St. 275 ; *Daniels v. Tearney*, 102 U. S. 421 ; *Lucas v. Bank of Darien*, 2 Stew. 280 ; *Hill v. Huckabee*, 70 Ala. 183 ; *Caldwell v. Smith*, 77 Ala. 157.

STONE, C. J.—This cause was before us at a former term.—*Jones v. McPhillips*, 77 Ala. 314. It was before us then on the demurrer to the original bill for want of equity, and the chancellor's ruling thereon, overruling the demurrer, and taking jurisdiction of the trust. Accompanying the original bill, and made also a part of its prayer, was an application to the Chancery Court to remove Jones as assignee, and to place the trust and its administration in the hands of a receiver. This part of the prayer was denied by the chancellor, and, as we have said, he overruled the demurrer to the bill, and made a decretal order, that the trust be administered in the Chancery Court. From that decretal order the appeal was taken to this court. The error assigned was, the granting of the order by the chancellor taking jurisdiction of the trust, on the averments as they appeared in the original bill.

The averments of the original bill are fully set out in the opinion of the court delivered on the former appeal (77 Ala. 314), and need not be here repeated. The assignment was executed July 8, 1884, and the bill in this case was filed the next day. The *gravamen* of its charges was directed against the capacity and fitness of the assignee, Jones, to administer the trust ; and it presented no question of complication in the accounts, or of actual or apprehended error in the administration of the trust, which called for instructions from the Chancery Court. The only charge looking in that direction is the following : "That the said trust is, from its very nature and terms, one which can not be effectually managed and discharged, and dividends duly declared, except under the jurisdiction and direction of a court of equity." The assignment was a general one, made for the benefit of all the creditors, without specifying who they were, and without describing the property conveyed, or any part of it. We there said : "It should require a strong

[Jones v. McPhillips.]

case—much stronger than is here shown—to justify the court in interfering with the trustee's administration of the trust, at the very threshold of his duties. Dishonesty, faithlessness, fraud, incompetency, or inefficiency, sufficiently averred in its constituent facts, would justify the displacement of the trustee or assignee, and the transfer of the trust to the Chancery Court. Without a cause shown sufficient to remove or displace the trustee or assignee named in the assignment, a bill, filed as this was, is without equity, unless it sets forth, with proper averment of facts, some special equitable ground, why the trustee shall not proceed without instructions from the Chancery Court, and shows further that the trustee persists in the execution of the trust, without invoking such instructions. There are many cases of questionable interpretation, in which it is both the privilege and duty of the assignee to obtain the court's instructions. Refusing to do so, and assuming to act on his own unaided judgment, we will not say a beneficiary, who shows himself injured by the erroneous judgment of such assignee, may not himself, at any stage of the administration, invoke and obtain a decree of the Chancery Court, correcting such erroneous judgment of the assignee, and properly administering the trust. Of course, such bill by a dissatisfied beneficiary would be at the risk and peril of establishing and fastening error on the assignee, and should not be resorted to, except in cases of threatened injury, for which there is no other adequate means of redress or prevention." We added : "It is not our purpose, however, to decide the question last discussed." In that case we held, that the demurrer to the bill should have been sustained ; and we "remanded the cause, that the bill be dismissed in the court below, unless so amended as to cure the defects in the present bill."

It will be discovered in what is stated above, and in the statements of our former opinion, that the original bill in this case had one controlling purpose—the removal of Jones, the assignee, from the trust. It set forth some grounds why he should be removed ; but both the chancellor and this court held the grounds insufficient. The bill also prayed that the Chancery Court take jurisdiction of the trust, and direct its administration, but no special ground was averred why such order should be made. This branch of relief was prayed, on the erroneous postulate, that the court of chancery will take jurisdiction of the administration of a trust, such as this, at any stage of the proceeding, and without special grounds therefor. Our ruling was, that the bill was fatally insufficient in each of these aspects, and

[Jones v. McPhillips.]

that it showed no ground why the assignee should be removed, nor why the Chancery Court should take jurisdiction of the trust and its administration. We consequently directed the bill to be dismissed, unless it was so amended as to cure its defects. We adhere to the legal principles we then announced, in reference to the right of a beneficiary to have the administration of a trust, in which he has an interest, placed under the direction of the Chancery Court. Jones R. R. Securities, §§ 432, 436; 2 Pom. Eq. § 1062, and note 2; *Coal Co. v. Blatchford*, 11 Wall. 172, 177; *Campbell v. R. R. Co.*, 1 Woods, 369; *Richards v. Ohio R. R. Co.*, 1 Hughes, 28.

As we have heretofore stated, the Bank of Mobile made its assignment July 8, 1884. The original bill in this case was filed July 9, 1884. The chancellor's order, refusing to appoint a receiver, or to remove Jones as assignee, bears date August 30, 1884, and was received and filed by the register September 1, 1884. That order overruled the demurrer to the original bill, and contains this clause: "The bill is for the purpose of bringing the administration into this court; and whether Winston Jones is permitted to go on with the trust, or whether another trustee or receiver is appointed, this court will take jurisdiction of the trust, and require the trustee to execute it under the direction of the court." On July 8, 1885, this court rendered its decree on the interlocutory ruling of the chancellor, and therein employed the language hereinbefore copied, pronouncing the bill insufficient.—77 Ala. 314. The order of this court was certified to the Chancery Court July 9, 1885, and was received and filed by the register July 10, 1885. The amended bill was filed in this cause August, 1885. It sets forth several grounds, which fully justify the transfer of the trust and its administration to the Chancery Court, if moved for by the assignee. Have the complainants in this cause—beneficiaries under the deed of assignment—brought themselves within the rule which allows them to become actors?

The amended bill, as we have said, sets forth matters of complication and difficulty, which justify, if they do not require, the interpretation and direction of the Chancery Court in their administration. It does not aver that the assignee is committing, or is about to commit, any errors in the execution of the trust; or that he is disregarding, or about to disregard, any duty enjoined on him by the assignment. It does not charge the assignee with any neglect, unreasonable delay, or failure to execute the trust properly, or failure to render proper account, or make proper distribution. It not only fails to aver that the assignee had

been requested to seek and obtain instructions as to his duties from the Chancery Court, but it utterly fails to negative or deny that he had done so. There is a demurrer to the amended bill, on many grounds.

It is contended that the case of *Wilson v. Brown*, 12 N. J. Eq. 246, supports the equity of the amended bill. That was a very peculiar case. Two assignments had been made by the same debtors, to the same assignee ; and the contention was, whether the creditors under the first or second assignment had the preference. The largest part of the assets consisted of a judgment against the sheriff, which Wilson & Co., indemnifiers of the sheriff, were bound to pay. Wilson & Co. were large creditors and beneficiaries under the first assignment, and claimed that large part of the money would be coming back to them. The assignee admitted the complication and uncertainty in the administration of the trust, and intended to ask the Chancery Court to instruct him as to his duties, but not until after he collected the judgment against the sheriff. Thereupon, Wilson & Co. filed their bill, asking instructions and decree of the court as to the preferences, and with their bill deposited in the court the amount of money due on the judgment against the sheriff, and prayed and obtained an injunction against the collection of the execution upon said judgment. In reply to a motion to dissolve the injunction, the chancellor, among other things, said : "Wilson & Co. were ready to pay to the assignee the amount of the judgment against the sheriff. As creditors of Brown and Demarest (the makers of the assignments), they claim an interest in the money. The assignee is their trustee, as well as of the other creditors. Conflicting interests exist between these creditors. The assignee admits that doubts exist as to the rights of creditors under the assignment. What guaranty had Wilson & Co., if they paid the money to the assignee, that he would come to the court for the protection of the creditors? It appears to me they were right in filing their bill, and in bringing the money into court.

"Why should this injunction be dissolved? It only restrains the assignee from enforcing his judgment against the sheriff. But that money has been paid into this court, and is here for the assignee's benefit. . . It is insisted that the assignee has a right to have the money in his own hands, and under his control. This injunction does not prevent that. He may have the money for the asking." The chancellor refused to make the interlocutory order dissolving the injunction.

This is the only authority cited by counsel in support of

[Jones v. McPhillips.]

the equity of the amended bill. The case was fundamentally different from the present one in many respects, which will readily occur to the reader. It may be added, the ruling was interlocutory, and we know not what disposition was finally made of the case.

Winston Jones, the assignee, answered the amended bill at length, and, among other grounds of defense, he set up that on August 29, 1884, he, the assignee, had filed his original bill in said court, and had therein averred that certain complications and conflicting claims had arisen in the administration of the trust, and that he had asked the advice and direction of the Chancery Court in reference to said complicated matters. He had set forth in said bill the complications and conflicting claims which had thus arisen, and in his answer he stated and described the matters of complication, on which he had sought direction in his original bill. He averred, further, that the questions of complication and conflicting claim had all arisen since July 9, 1884, when the original bill in this cause was filed, and that the averment and description of complications and conflicting claims set up in the amended bill in this case, are but a reproduction and repetition of similar averments, contained and found in the said original bill of Winston Jones, filed August 29, 1884. He further averred that, before the amended bill was filed in this case, all the matters of complication growing out of said trust had been settled and determined by the chancellor's decree, except the claim of Williams, Deacon & Co.—one of the claims upon which instructions had been asked—and that their claim was pending and undetermined under their cross-bill, filed to the said bill of August 29, 1884. The evidence showed that all the averments set out above were true, and that on July 9, 1885, a decree was rendered in said cause—the bill of August 29, 1884—settling all the matters of complication and conflicting claim, except that of Williams, Deacon & Co., which was still pending in that suit. So that, in fact, when the amended bill in this case was filed, every question of complication, and of controverted claim, as to which it asks instructions, had been determined and settled, except the one claim of Williams, Deacon & Co.; and as to it, there is no contention that it was not pending before the court for instructions and decision, under the said bill of Winston Jones, filed August 29, 1884. Why consider and determine these controverted questions twice? Why re-examine them, after they have been decreed upon and settled, and the decree not assailed, but acquiesced in? In answering these questions, we can consider only the rights of the bene-

[Jones v. McPhillips.]

ficiaries, the safety of the assignee, and the prevention of waste of the effects assigned.

For appellees it is contended, that an amendment of a bill, when properly allowed, takes effect as of the filing of the original bill; and inasmuch as the original bill in this case was the first filed—July 9, 1884—the amended bill, with its averments, must be treated as if filed at that time. This, it is claimed, gives it priority over the later bill by Winston Jones. There are many answers to this. The rule that an amendment to a bill, if properly allowed, takes effect as of the filing of the original bill, is not true under all circumstances, and to all intents. It can not be true in this case; for the facts set up in the amendment, which it is claimed heal the imperfections in the original bill, occurred after that bill was filed, and could not have been embodied in it. Under our statute, supplemental matter is introduced by amendment.

We can not presume facts were averred to exist, at a time when they had no existence in fact. But the presumption is a mere legal fiction, and fictions can not be so stretched, as to presume the existence of the impossible. They can not be indulged to the prejudice of accruing, intervening titles, and can not retroact so as to unsettle vested rights, innocently acquired. They are indulged in furtherance of justice, but are not allowed to work an injustice.—Bouv. Dic.; Rapelje's Dic.; *Ala. C. & N. Co. v. State*, 54 Ala. 36; *Goodman v. Winter*, 64 Ala. 410, 437; *Chapman v. Fields*, 70 Ala. 403. The rule as to the allowance of amendments introductive of a new right or recovery, and the defense of the statute of limitations thereto, is an illustration of the principle we are discussing.—*King v. Avery*, 37 Ala. 169; *Mohr v. Lemle*, 69 Ala. 180; *Doe v. Richardson*, 76 Ala. 329.

When the original bill in this case was filed, it was fatally wanting in equity. Not until near fourteen months afterwards were the averments made by way of amendment, which it is claimed give it equity. It was filed against Jones, and its controlling purpose was to remove him from the trust for incompetency. The prayer to have the trust transferred to the Chancery Court was based on no special ground of complication or conflicting claims, calling for judicial interposition. It averred no such complications. The prayer for equitable interposition was rested on two grounds : first, the incompetency of Jones, and, as a consequence, the duty and necessity of appointing another trustee, or a receiver, to execute the trust; and second, on the assumption that the beneficiaries complaining could claim, as matter of right, without any special reason there-

[Jones v. McPhillips.]

for, that the Chancery Court could and would take control
of the administration of the trust. The first of these
grounds failed, alike in the averments and in the proof.
The second, as a proposition of law, was indefensible. The
bill stood without equity for near fourteen months, and
with nothing on its face to notify Jones, or any one else,
that the amendment afterwards made would be offered.
Jones, being defendant, had no power or control over the
bill of complainants, and can not be presumed to have
known, or even to have suspected, the course complainants
would afterwards pursue. At an early stage, and before
the chancellor had made any ruling on complainant's bill,
very serious complications and counter claims arose,— so
grave that no one will question the assignee's right to have
the court's instructions before attempting their settlement.
Will it be contended that he should have suspended opera-
tions, and stood idle, until it could be ascertained what
course complainants would ultimately pursue? whether
they would so transform their bill, as to make it represent
the complications, and pray for instructions in their solu-
tion? The statement of the question is its refutation.

The chancellor's decree on the amended bill was rendered
November 29, 1886. Among other matters, it "ordered, ad-
judged, and decreed, that complainants are entitled to relief,
and to have this court take jurisdiction of the administra-
tion of the trust described in the bill; and therefore it is
further ordered that this court take jurisdiction thereof."
Under the bill filed by Winston Jones, assignee, the chan-
cellor had rendered his decree July 9, 1885. In it he "or-
dered, adjudged, and decreed, that the said assignee shall
proceed in the further administration of his trust, under
the discretion in the deed of assignment given him, subject
to the terms and findings of this decree, and such other or-
ders or decrees as have been, or may be hereafter rendered
in this cause." How was the decree under the amended
bill to be carried into effect, and to what end? Were the
issues to be formed anew, and a re-trial of them had under
the amended bill, notwithstanding their consideration and
decision in the former decree? and notwithstanding no
error was shown in such former ruling, nor even dissatisfac-
tion with the result expressed?

The appellees contend that Jones, the assignee, is
estopped from disputing the equity of their bill as amended,
and from complaining of the relief they obtained there-
under.

Neither this defense, nor any allusion to the facts upon
which it is sought to be maintained, is mentioned any where

8

in the pleadings. All that is shown in regard to it is contained in the following extract from the deposition of Winston Jones, taken in this cause, and was brought out on cross-examination by complainants in this suit.

"16 Cross-Int. Did not R. Charles Beale file in the U. S. Circuit Court, at Mobile, a bill against you, to subject the special fund received by you from the Merchants' Natl. Bk. to the payment of a bill of exchange for $4,428.93 drawn in his favor by the Bk. of Mobile.

" To the 16th Cross he saith :—R. Charles Beale did file such a bill.

"17 Cross–Int. Did you not file a plea to said bill, duly sworn to by you, in which you alleged as follows: 'that James McPhillips, with others creditors of the Bank of Mobile, had filed in this honorable court a bill against you as assignee of said bank and against other defendants ; that the 'general nature, scope and object of said bill, which is known in law as a general creditor's bill, was and is to bring under the jurisdiction and control of said Chancery Court of the State of Alabama the whole subject-matter of the trust arising out of the said assignment aforesaid, and the prayer of said bill is that said court will take jurisdiction of the trust and administer it for the benefit of all creditors of said bank of every class, and dispose of its assets and divide the proceeds thereof among those entitled thereto, and finally wind up the business of said bank as the law directs.' The said bill further prays, as an incident to its main object, 'that in the meantime, for the many good and sufficient reasons therein set out, and for the preservation and proper administration of said trust fund, that your honor will remove the said Winston Jones, as assignee, and appoint in his stead a receiver who can administer said trust under the direction of this honorable court.' Is not the above extract from your sworn plea exact and accurate ? If not, state wherein it varies from the original. Was not a hearing had on said plea by the United States Circuit Court, and did not said court hold that under the said bill of McPhillips et al. v. you et al., that the Mobile Chancery Court had exclusive jurisdiction of the administration of your trust? After said plea was so sustained, was not the bill of Beale v. you dismissed ?

"To the 17th Cross he saith :

"A plea in substance as mentioned was filed in this way, and I believe the United States Court did sustain the plea. I did swear to the plea, and I think the facts therein stated are true. The bill was filed by Beale to have his draft declared a partial assignment of the funds of the Merchants

[Jones v. McPhillips.]

National Bank of New York.  My attorney Mr. Clark told
me that, under the decision of the United States Supreme
Court, the case would certainly go off on the demurrer he
had prepared.  Mr. Clark, my attorney, told me that Mr.
Hannis Taylor, solicitor for the complainants in this cause,
had suggested to him (Clark) that he (Clark) file such a plea
and that he (Taylor) would draw it for him, and help him
argue it; and Mr. Clark said to me, that he thought the plea,
was good, if the McPhillips bill could stick in court long
enough to get a ruling on the plea, but that he thought that
as soon as the chancellor heard the demurrers he would
dismiss the McPhillips bill.  He said further that, if the
plea was sustained, 'all right,' if not sustained, the demur-
rers would dismiss the bill, and that it made very little dif-
ference.  He asked me if I had any objection to letting Mr.
Taylor sign the plea with him as solicitor for me, that if he
filed the plea prepared by Mr. Taylor he would like to let
Mr. Taylor appear with him.  I remarked that I employed
him (Clark), that he (Clark) was my attorney in the matter,
and it was a matter for him (Clark), and if he desired it I
had no objections."

It will be observed that the plea simply avers the fact
that the bill (original) in this case had been filed, and the
object of it.  It did not aver that the court had taken juris-
diction of the case, or had made any ruling on said bill.
The silence of the plea on that subject, and other facts
shown in Jones' testimony recited above, raise the presump-
tion, that the plea was filed before the chancellor made his
first order in this cause, August 30, 1884—filed with the
register September 1, 1884.  If filed afterwards, it would
seem the plea would have averred it.  If this reasonable
inference is untrue in fact, the record furnishes no means
of correcting it.  But we deem this immaterial in the proper
determination of the plea.  Beale's bill, as described, was
manifestly without equity.—*Ex parte Jones*, 77 Ala. 330.

As we understand the plea, it simply asserted the truth
—the undisguised truth—according to the most exacting
moral standard.  It made no attempt to deceive or mislead.
And the defense relied on in this case does not controvert
one iota of the averments of the plea.  The truth of what
was pleaded is fully proved by the record before us.  Can
estoppel be predicated of such premises?  "The doctrine of
estoppel *en pais* rests on the principle of maintaining good
faith between man and man, when one person, by his acts,
words, conduct, or silence, induces another, acting on the
faith thereof, to pledge his credit, or incur a liability, or to
part with something valuable.  To come within this princi-

ple, the representation, whether spoken or acted, or implied from silence, must be credited as true, and the valuable thing parted with, the credit given, or liability incurred, as a consequence of such representation, and in confidence of its truth."—*Leinkauff v. Munter,* 76 Ala. 194; *Ware v. Cowles,* 24 Ala. 446. The doctrine rests on the stern purpose of the law to maintain good faith between men. It rests, for its vindication, on the manifest idea, that to allow such representation to be gainsaid, would be a fraud on him who had acted on the faith of it, believing it to be true. The element of fraud is essential, either in the intention of the party estopped, or in the effect of the evidence he attempted to set up —*Henshaw v. Bissell,* 18 Wall. 255, 271; *Dolarque v. Cress,* 71 Ill. 380; *Chandler v. White,* 84 *Ib.* 435; *St. Jo. Man. Co. v. Daggett, Ib.* 559; *Hill v. Epley,* 31 Penn. St. 331; *Dezell v. Odell,* 3 Hill, (N. Y.) 215; *Matlow v. Cox,* 25 Tex. 578.

The conduct of causes in court, and the results thereby attained, have sometimes been held as working an estoppel *en pais,* precluding the party, who thereby obtained a decision in his favor, from afterwards disputing or controverting the truth of the ground, on which he had achieved his former success. Such cases combine all the elements of estoppel set forth above. To allow a party who succeeds in defeating one action, on a seeming state of facts, though false, to shift his ground, and defeat a second action, by disproving the truth of his first defense, would be to sanction the grossest abuse and fraud.—*Hill v. Huckabee,* 70 Ala. 183; *Caldwell v. Smith,* 77 Ala. 157.

It is contended for appellee, that the principle we are considering applies to this case, and estops Jones, by force of his plea and the ruling on it, from controverting the rightful pendency and legal sufficiency of the present suit, as a bill for advice and instructions in the administration of the trust. There are authorities which hold that such estoppel operates only in favor of persons or parties directly affected by the former ruling, or persons who are in privity with them.—*Murray v. Sells,* 53 Ga. 257; *Catlin v. Grote,* 4 E. D. Smith, 296. The case most relied on by appellee is *Daniels v. Tearney,* 102 U. S. 415. One clause of the opinion in that case, on page 221, somewhat favors the argument. That clause went beyond the wants of the case; and if the construction claimed be the true one, it states the doctrine too broadly. While the decision in that case was correct, on the real case before the court, none of the authorities cited in the opinion assert the principle as broadly as the argument in this case claims.—*Lee v. Tillotson,* 24

Wend. 337; *Van Hook v. Whitlock*, 26 Wend. 43; *People v. Murray*, 5 Hill, 468; *Thurman v. Fiske*, 30 How. Pr. 397; *Glackin v. Z·ller*, 52 Barb. 147; *Baily v. Baily*, 44 Penn. St. 274; *Ferguson v. Landrum*, 5 Bush (Ky.), 230; *City of Burlington v. Gilbert*, 31 Iowa, 356; *Railroad v. Stewart*, 39 *Ib.* 267.

The case of *Napier v. Foster*, 80 Ala. 379, holds, that a pending suit, although fatally defective, and subsequently dismissed on that account, will defeat a second suit on the same cause of action, brought before the dismissal of the first.

There is nothing in the estoppel relied on in this case.

In one aspect, the present suit has accomplished a good result. It was the means of obtaining a bond from the assignee.—Code of 1876, §§ 3724, *et seq.* In all other respects it is without merit, and must fail.

The decree of the chancellor is reversed, and here rendered, sanctioning and approving so much of the purpose of the original bill, as prayed and obtained the execution of a bond by the assignee; and that bond is ordered to be retained in the registry of the court, as a security that the assignee will faithfully administer the trust, and perform the duties required of him under the assignment. For all other purposes, both the original and amended bills are without equity.

One-half of the costs of the original suit incurred in the Chancery Court, up to and including the rendition of the interlocutory decree—September 1, 1884—will be paid by the assignee, out of the trust funds. All other costs incurred in the court below, and in this court, will be paid by complainants in this suit, *in solido*, but to be distributed among themselves in proportion to their several claims.

Reversed and rendered.