# Wedgworth *v.* Wedgworth.

*Bill in Equity to set aside Conveyance of Lands as Fraudulent and to Subject them to Payment of Debts.*

1. *Equity pleading; multifariousness.*—A bill seeking to set aside a conveyance of land as fraudulent as to creditors, and to subject the land conveyed to payment of a debt is not multifarious.

2. *Fraudulent conveyance; between husband and wife; burden of proof.* When a creditor whose claim existed at the date of conveyance of land by a husband to his wife attacks such conveyance as fraudulent, the burden of proof is on the grantee to show a consideration not materially disproportionate to the value of the land conveyed, and a clearer and fuller proof is required than if the transaction had been between strangers.

3. *Same.*—In this case, upon the evidence given by the wife and her witnesses the conveyance was declared fraudulent.

APPEAL from Hale Chancery Court.

Heard before Hon. THOMAS COBBS.

The bill was filed by Middleton Wedgworth, a judgment creditor, and sought to set aside as fraudulent a conveyance of lands by John M. Wedgworth to his wife Nancy A., and to subject said lands to payment of the indebtedness of John M. to Middleton Wedgworth. On final decree the conveyance was set aside, and the lands ordered to be sold in payment of said indebtedness.

[Wedgworth v. Wedgworth.]

WATTS & SON, and COLEMAN & COLEMAN, for appellants.

JAS: E. WEBB, *contra.*

STONE, C. J.—There was a demurrer to this bill on the ground of multifariousness, in this: That the bill seeks to set aside a conveyance from John M. Wedgworth to his wife as fraudulent, and, in one and the same suit, seeks to condemn the land conveyed to the payment of John's debt. The former branch of relief is only an incident—a necessary incident to the latter. There is not only no incompatibility in the two elements constituting the relief prayed, but, filed as this bill was by a creditor, the one is the indispensable complement of the other. Only a creditor can complain of such fraud, as an obstacle to the enforcement of a just demand, and he has no right to interfere, save as a creditor prosecuting a valid and lawful claim. The facts averred do not furnish material for two suits.—*Slone v. Life Ins. Co.*, 52 Ala. 589; *Wilkinson v. Bradley*, 54 Ala. 677; *Johnson v. Smith*, 70 Ala. 108; 3 Brick. Dig. 389, § 359.

There is in this case no denial of the fact that John M. Wedgworth was and is indebted to the complainant, in the sum for which the latter recovered judgment. Nor is it denied that this indebtedness existed before and at the time John M. Wedgworth conveyed the land to his wife. These undisputed facts placed on Mrs. Wedgworth the burden of proving a consideration for the deed, not materially disproportionate to the value of the land conveyed to her. And the conveyance being from the husband, a clearer and fuller measure of proof was required, than if the transaction had been between strangers. In *Pollak v. Searcy*, 84 Ala. 259, we stated this principle very distinctly, and cited the authorities in support of it. We need not repeat what we there said.

Has Mrs. Wedgworth proved the consideration of the deed to her, with that measure of proof which is required in such cases? Her witnesses are herself, Nancy Wedgworth, her husband John M. Wedgworth, her mother, Jane Gewin, and her two brothers, John and Noah Gewin. They testified to transactions, which occurred from twenty to thirty years before they were examined as witnesses. The subjects about which they testified are, the number of slaves and quantity of money Mrs. Nancy Wedgworth received from the estate of her father, Christopher C. Gewin, the property she ac-

quired from her first husband, Logan, the number of slaves she owned at her marriage with Wedgworth, the notes she held at that time, the names of the makers, the amount each note called for, and the total amount represented by the notes. All of these witnesses testify exactly alike, except John Gewin, who does not give a full list of the notes, nor their gross amount. In other respects he testified like the others, with the additional exception, that in giving the amount of money received by Mrs. Wedgworth from her father's estate, he said it was "about sixteen hundred dollars." The others stated positively that she received sixteen hundred dollars. They give the amount of the notes held by her at her second marriage at six thousand eight hundred and seventy-five dollars. In each of these respects, each witness is positive, except John Gewin, as stated above.

The transcript contains that part of the record of the administration of C. C. Gewin's estate, which shows the division and distribution. It also contains the record of Mrs. Wedgworth's administration of the estate of her first husband, Logan. The Gewin estate was settled and distributed about 1852 or 3. Mrs. Nancy Wedgworth, then Nancy Gewin, received four slaves, valued at $2,400, and in money $702.33. In February, 1855, Nancy intermarried with Logan, and in March afterwards her guardian, Harris, made his final settlement. There was decreed to her as balance due, $1,443.12, which, together with the slaves, was then and there receipted for by her and her husband Logan.

Logan died in September 1855, and his widow, the said Nancy, administered on his estate. He had five slaves, a horse and buggy, and gold watch. The horse and buggy and watch were appraised at two hundred and seventy dollars. Three of the slaves were sold under order of the court for the payment of debts against Logan's estate, and were bought by Mrs. Logan, widow, for $1310. This sum she accounted for as assets in her settlement in 1858. She also accounted for $300 for hire of negroes for 1855, charged to her as assets. There was allowed as a credit, amount due Nancy Logan, voucher 26, $358.91. Whether or not this was herself, we are not informed. On her settlement there was ascertained to be due her, excess of disbursements, $238.67. And she had exhausted in the administration the entire assets of her husband's estate, except two slaves, the horse and buggy and watch. She had done more. She had exhausted her own money, $1443.12, in the purchase of slaves, and in

[Wedgworth v. Wedgworth.]

the excess of disbursements over assets, found in her settlement.

Mrs. Logan intermarried with John M. Wedgworth in November, 1858, and the lands embraced in this suit were conveyed directly from him to her in 1881, on the recited consideration of ten thousand dollars. The testimony offered in support of this alleged consideration is that of the five witnessess mentioned above. Four of them, John M. Wedgeworth, Nancy Wedgworth, Jane Gewin and Noah Gewin, swear that when Mrs. Logan intermarried with Wedgworth, she held notes payable to herself, amounting to sixty-eight hundred and seventy-five dollars, that in 1859 she lent these notes to her husband Wedgworth, and that he collected and used the money. They give the number of the notes, thirteen, give the names of the makers, and the amount secured by each, and the gross amount, $6,875, each of them precisely alike. It is out of the routine of ordinary affairs that these four witnesses should each have ever known all these facts. It is still stranger that they should all remember them after a lapse of twenty-five years, and stranger still that their recollections should exactly correspond in every particular. Yet, stranger than all, the sum of the several notes as described by each of these witnesses is $6,825; showing that each of them made the same mistake of fifty dollars in the addition.

From what source did she derive so large an amount of solvent notes? She had four slaves of her own, two men, and two young women, one of them with an infant. She had the hires of these for four years—1855 to 1858 inclusive. She acquired from Logan's estate five slaves—two men, which came to her under his will, and three by purchase; an elderly woman and two boys. The Logan negroes hired for three hundred dollars for the year 1855. This went to Logan's debts. She then had the hires of these slaves for three years, 1856 to 1858 inclusive. It is not shown from what source she derived her support during these three years. She was again married in 1858, and marriages usually entail expense. It requires very liberal arithmetic to swell these hires to any thing approximating the sum claimed.

The five witnesses, whose testimony we are considering, all testify that when Mrs. Logan intermarried with Wedgworth she owned fourteen slaves. Being asked to describe them, each specifies the five by name which came from the

Logan estate. These had no increase. Each then specifies by name the four which came to Mrs. Wedgworth in the division of her father's slaves, and each adds, "and four children." Now, while the numbers given by each witness foots up thirteen, each falls into the same error of saying there were fourteen. There are other features of the testimony we might comment on, but we forbear. We do not think the consideration of the deed is sufficiently established.

Affirmed.