## FISHER et al. v. MOOG et al.[1]

### (Circuit Court, S. D. Alabama. August 28, 1889.)

1. FRAUDULENT CONVEYANCES—ACTIONS TO SET ASIDE—BURDEN OF PROOF.

Where the allegation of the complaint in a suit to set aside conveyances as in fraud of creditors, that the grantor is and was at the time of the conveyances indebted to complainants, is not denied, the burden of showing a consideration, not materially inadequate, is on the grantees.

2. SAME—TRANSACTIONS BETWEEN RELATIONS.

Where such grantees are the half-brother and the son-in-law of the grantor, a clearer, fuller measure of proof is required than if the transactions had been between strangers.

3. SAME.

In such case, where the only evidence on which defendants' witnesses are agreed is that the consideration mentioned in the deeds, i. e., a precedent indebtedness, is the true one, and that the grantor has retained control of the property ever since the execution of the deeds, and the evidence as to when, where, and how the indebtedness was created is irreconcilably inconsistent and conflicting, it is insufficient to show that defendants were bona fide purchasers.

4. SAME—ESTOPPEL.

As defendants claim under a deed from the debtor, they are estopped to deny his title and to allege that complainants were thus not injured by the conveyances.

5. SAME—PLEADING—EQUITY.

The bill charged that a conveyance to one of the defendants for a recited consideration of a certain sum was made to defraud creditors; that the grantor did not owe such sum, or near it; and that the defendant held the property as security or for the benefit of the grantor, and prayed that the conveyance be set aside, the property sold, and out of the proceeds the defendant's claim be paid and the balance applied on complainants' debts, or, if the conveyance was voluntary, that it might be declared void and the entire proceeds applied to complainants' debts. Held that relief might be granted under either the special or general prayer, as, though such special prayer was in the alternative, it was certain in its terms.

6. EQUITY PLEADING—WAIVER OF OATH.

Where an original bill, by its foot-note, waives oath as to all defendants, and another defendant is brought in by amendment, and instead of a new foot-note the original foot-note is amended by naming him as defendant, his oath is waived.

In Equity.

Bill by Fisher, Parker & Co. and others to set aside two conveyances made by Bernard Moog, one to his half-brother Aaron Moog and one to his son-in-law Isadore Strauss, as made in fraud of creditors.

Overall & Bestor and Pillans, Torrey & Hanaw, for complainants.

G. L. & H. T. Smith, R. H. Clarke, and G. B. Clark, for sundry defendants.

TOULMIN, J. A conveyance of property as against the existing creditors of the grantor cannot be supported unless shown to have been founded on an adequate and valuable consideration, and when between

[1]Reported by P. J. Hamilton, of the Mobile, Ala., bar.

the grantee and an existing creditor a controversy arises as to the validity of the conveyance, the *onus* of proving that it was founded on an adequate and valuable consideration is cast on the grantee. The recital of a consideration in the conveyance is not evidence against the creditor. *Hubbard* v. *Allen*, 59 Ala. 283; *Harrell* v. *Mitchell*, 61 Ala. 270; *Zelnicker* v. *Brigham*, 74 Ala. 598; *Buchanan* v. *Buchanan*, 72 Ala. 55; *Owens* v. *Hobbie*, 82 Ala. 466, 3 South. Rep. 145; *Wedgworth* v. *Wedgworth*, 84 Ala. 274, 4 South. Rep. 149; *Walton* v. *Atkinson*, 84 Ala. 592, 4 South. Rep. 681. The relationship of the grantor and grantee, the pendency or apprehension of suits on pecuniary debts or liabilities then existing, are circumstances from which unfavorable presumptions are drawn, and which call for evidence of a full and valuable consideration, and the burden rests on the grantee to repel these presumptions, and the sufficiency of the proof of a consideration must depend on the relations existing between the parties, the circumstances surrounding them when the transaction was entered into, and their subsequent conduct in reference to it. Clearer and more convincing proof will be required if these are calculated to excite a just suspicion of the fairness of the transaction. Say the courts:

"Transactions between parties nearly related by affinity or consanguinity are jealously watched in a court of equity, and should be closely scrutinized. Whenever such relationship exists, and the rights of creditors are involved, clearer, fuller proof must be given of an adequate and valuable consideration and of the good faith of the grantee than would be required of a stranger." Authorities cited *supra*, and Bump, Fraud. Conv. 54; *Lipscomb* v. *McClellan*, 72 Ala. 151; *Gordon* v. *McIlwain*, 82 Ala. 251, 2 South. Rep. 671; *Pollak* v. *Searcy*, 84 Ala. 259, 4 South. Rep. 137.

There is in this case no denial of the fact that Bernard Moog was and is indebted to the complainants, as is set out in the bill of complaint; nor is it denied that such indebtedness existed before and at the time he made the conveyances to his half-brother Aaron Moog and to his son-in-law Isadore Strauss, whose validity is assailed in the bill. It is shown, then, that the complainants are creditors who could be hindered or delayed by said conveyances. These undisputed facts place on said Aaron Moog and Isadore Strauss the burden of proving a consideration for their deeds, and not materially disproportionate to the value of the land conveyed to them, and, the conveyances being from the half-brother in the one instance and the father-in-law in the other, a clearer and fuller measure of proof is required than if the transactions had been between strangers. The consideration attempted to be proved in support of the conveyances in question is not the payment of money to the grantor, but the extinguishment of an indebtedness owing by him as surviving partner of A. & B. Moog to the grantees.

Counsel for defendant Aaron Moog contends that, as his answer which denies the allegations of the bill is sworn to, it is evidence, and can only be overcome by the testimony of two witnesses, or that of one witness with corroborating circumstances, and that as no such proof has been made by complainants the bill must be dismissed as to him. Aaron

Moog is made a defendant by an amendment to the original bill, and the contention is that there is no foot-note to the amendment waiving oath to his answer. The original bill, in its foot-note, waived oath as to all defendants, and in the amendment which brought in Aaron Moog, instead of a new foot-note, the foot-note to the original bill was amended by naming him as one of the defendants, and stating what part of the bill he was required to answer. So the amended foot-note covered him, and his answer is not evidence, oath thereto having been waived. An amendment of a bill, when properly allowed, takes effect as of the filing of the original bill, (*Jones* v. *McPhillips*, 82 Ala. 102, 2 South. Rep. 468; 1 Brick. Dig. p. 705, § 953;) and the foot-note is a part of the bill, and any alteration in or addition to such note after the bill is filed shall be treated as an amendment to the bill, (Amended Rules 41, 42, Equity Rules of United States Circuit Court.)

Again, it is contended in argument by counsel for defendants that the title to the property conveyed to Aaron Moog, and a part of that conveyed to Isadore Strauss by Bernard Moog, as appears from deeds attached to Strauss' deposition, stood in the name of A. & B. Moog, and some part of it in the name of A. Moog, and that as it does not appear from the evidence that the partnership debts of A. & B. Moog have been paid, such property is not subject to B. Moog's debts, and no injury, therefore, is shown by complainants; that fraud and injury must concur to entitle complainants to relief. It appears that A. & B. Moog was a partnership, which was dissolved by the death of A. Moog about a year before B. Moog failed in business, and made the conveyances to Aaron Moog and Isadore Strauss. The bill is filed to set aside these conveyances, on the alleged ground that they were made to hinder, delay, and defraud his creditors. The answers do not set up any want of title in B. Moog, or that there were any partnership debts of A. & B. Moog other than those of said Aaron Moog and Isadore Strauss. Can an issue be raised in argument that is not presented by the pleadings? There is, however, oral proof in the cause that B. Moog acquired the title of A. Moog to said property by will. It is true, it is not competent to prove wills in this way, but no objection was made to this oral proof, (testimony of Isadore Strauss.) But are not Aaron Moog and Isadore Strauss estopped from denying or raising any question as to B. Moog's title? It is under the deed of B. Moog and wife that they claim to hold the property. It is his title that they have. It is his title that complainants seek to subject to their debts, and to do so they ask that his conveyances be set aside. If the complainants have otherwise made out their case, they are, in my opinion, entitled to condemn, to the satisfaction of their debts, whatever of interest or title B. Moog had in the property so conveyed. Both conveyances were executed on January 10, 1885.

The defendants' counsel further contends that "on account of the nature of the special prayer" of the bill no relief can be granted against Isadore Strauss under it; that it is in the alternative and uncertain in its terms; and that under the general prayer no relief can be granted, because it would be repugnant to and inconsistent with the special prayer.

The special prayer is in the alternative, but it is, under the allegations of the bill, certain in its terms. But if it were so uncertain that no relief could be granted under it, I think the prayer for general relief is sufficient to entitle the complainants on the hearing to such relief as the facts of the case may require. 1 Brick. Dig. p. 704, § 928. It is true that under the general prayer no relief can be granted which is distinct from and independent of that specially prayed for, except when the bill is filed in a double aspect. 1 Brick. Dig. p. 704, §§ 938, 939. But it is certainly permissible for a complainant to aver in his bill that either one or the other of two alternative statements is true. *Shields* v. *Barrow*, 17 How. 130–144; Story, Eq. Pl. § 254; *Thomason* v. *Smithson*, 7 Port. (Ala.) 144; *Strange* v. *Watson*, 11 Ala. 324; *Simmons* v. *Williams*, 27 Ala. 507. The bill in this case contains such alternative statements. The bill charges that the conveyance to Isadore Strauss for the recited consideration of $3,093 was fictitious and simulated, and was made to hinder, delay, and defraud the creditors of B. Moog. It also charges that Moog did not owe said sum, or anything near it, and that Strauss holds the property as a security for his debt, or for the benefit of Moog, having acquired it without consideration, and, whichever it may be, the special prayer is that the conveyance be set aside, and that the property be sold by decree of the court, and out of the proceeds to pay said Strauss anything which really may be due him, if anything, and the balance to be applied on the debts of complainants; or, if said conveyance be found entirely without consideration, but fictitious and simulated, that the same may be declared fraudulent and void, and the whole of the proceeds of said sale may be applied to the debts of complainants. My opinion is that relief may be granted complainants under either the special or general prayer.

1. Has Aaron Moog proved the consideration of the deed to him with that measure of proof which is required in such cases? His witnesses are himself, said Bernard Moog, and said Isadore Strauss. All of them testify that the consideration of the deed to him was an indebtedness of A. & B. Moog to him of $7,500, with interest from January 5, 1883, which they say was evidenced by a due-bill of $7,500 of that date, and which Aaron says he surrendered to Bernard at the time the deed was made to him. There are, however, many inconsistencies and irreconcilable statements and circumstances connected with Aaron Moog's claim. He testifies that the money was given to A. & B. Moog from time to time, and that he entered an account of the several sums so given them in his own ledger up to 1880, and that they were charged to his individual account in his firm (Moog & Weil) books; that they were doing a grocery business in Mobile at the time. He says he kept no account of moneys he let A. & B. Moog have after that time but what he kept in a pocket memorandum book, which he exhibits and offers in evidence; says he made each of the entries in it at the date he let them have the several sums of money. The books of Moog & Weil were not produced. But the memorandum book shows these entries written in pencil, and fresh in appearance, viz.:

| 1878. | A. & B. Moog. | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Dec. 3. | Cash, | - | - | - | - | - | - | - | 425 00 |
| 3. | - | - | - | - | - | - | - | - | 1,553 10 |
| 4. | - | - | - | - | - | - | - | - | 360 69 |
| 4. | - | - | - | - | - | - | - | - | 184 20 |
| 1879. | | | | | | | | | |
| Jan. 1. | - | - | - | - | - | - | - | - | 949 00 |
| 10. | - | - | - | - | - | - | - | - | 100 00 |
| 10. | - | - | - | - | - | - | - | - | 125 00 |
| Oct. 25. | - | - | - | - | - | - | - | - | 125 00 |
| Aug. 4-80. | - | - | - | - | - | - | - | - | 665 19 |
| Jan. 5-83. | Interest, | - | - | - | - | - | - | - | 975 00 |
| | Cash same day, | - | - | - | - | - | - | - | 2,221 57 |
| | | | | | Total, | - | - | - | 7,500 00 |

Due-bill for it.

An addition of the several items of cash as shown by this book, with the interest as charged therein, aggregates $7,684.35, and not $7,500, and if interest was calculated on each item of cash from the date it is claimed to have been loaned it would, with the principal, amount to more than $8,000. He says he had no arrangement about the interest A. & B. Moog were to pay. The deed recites the indebtedness paid thereby as a certain due-bill made by the former firm of A. & B. Moog on the 5th January, 1883, for $7,500, with interest from date. Aaron says he knew B. Moog was sued in a number of cases at the time he got the deed. He further testifies that he was in business in Montgomery, Ala., and failed there in 1874 or 1875, and settled with his creditors at 40 cents on the dollar. He again went in business there, and continued for about a year; then came to Mobile in 1876, or 1877, and went in business with Weil in 1877 or 1878. They had a capital of $3,000 to $5,000. Yet he was able to take out of this business on his individual account, according to his statement, in December, 1878, and in January, 1879, as much as $3,697.59, to loan to A. & B. Moog. It will be observed that there is but one item of cash charged on his memorandum book subsequent to August, 1880, and that was on January 5, 1883, and Aaron says the money came out of his business. Aaron further testifies that his brother Bernard has had control of the property and rented it; that Bernard collected the rent for him on a part of the property, and always turned it over to him and accounted for it; that he knew the property was insured, but did not know in what company it was insured, the amount of insurance, or the amount of premium paid; that Bernard paid the expenses and accounted to him for balance of rent. He could not say exactly when he received the last rent, or how much rent he had received altogether from the property. He never saw the notes the tenant gave for the rent. His brother got them, collected them, and settled with him. The other property covered by his deed was under a prior mortgage to the Mobile Savings Bank, and from this he got no rent. It was managed by the bank, and he had nothing to do with it. Bernard Moog testifies that he owed Aaron Moog on Janu-

ary 10, 1885, $7,500, due-bill for money borrowed from him by A. & B. Moog in 1882 and 1883, as they would need it. He says that the conveyances to him and Isadore Strauss "were made by A. & B. Moog's books. We looked at A. & B. Moog's books." This is all of his testimony on that subject. He says, however, that Aaron Moog has never got any benefit from the property; that he (Bernard) collected some rent at one time. He was hard up and collected two months' rent, and gave it to his son; collected it for Aaron Moog, and Aaron allowed him to use it, and he gave it to his son. He says this was the property covered by the mortgage to the bank, and that he collected this rent with the consent of the bank. He says nothing about the other property included in the deed to Aaron. Isadore Strauss testifies that A. & B. Moog owed Aaron Moog $7,500 money, which he deposited with them in 1883. He was book-keeper for A. & B. Moog at that time. He says Aaron brought the money with him from Montgomery.

2. Has Isadore Strauss proved the consideration of the deed to him by that clear and convincing proof required against creditors whose debts and rights are established? Bernard Moog testifies that the conveyance was to pay an indebtedness to Strauss of "thirty-one hundred and some odd dollars," which A. & B. Moog owed him and which arose in this way: That Strauss was their book-keeper, and got a salary of $150 a month, and whenever he had money he would loan it to A. & B. Moog as they would need it; that when he would have $100 he would let them have it and give himself credit for it; that it appears from A. & B. Moog's books of the property he conveyed to Strauss one piece was a brick house, and he believes he gave him two-fifths of this; that Strauss subsequently sold and conveyed this house to his (Bernard Moog's) wife; that she paid him mostly in cash, and gave him her note for $530, which she paid last summer to her daughter, Strauss' wife. He further testifies that he has managed and controlled the property conveyed to Strauss; that the state and county taxes have not been paid on it, and the city taxes were only paid by him a short time ago. The house was partially burned a few months ago, and when he undertook to collect the insurance money a garnishment was levied on it for the city taxes, and he had to pay them before he could get any of the money. Isadore Strauss, in his answer, says that he loaned A. & B. Moog $1,800 in December, 1875; that the interest to January 10, 1885, was $1,310, and their indebtedness to him on that day was $3,110, which was the consideration for the deed of that date; that they owed him about $2,800 for unpaid salary for services for several years. But he claims nothing on account of salary so due him. In his deposition he says that they owed him $3,114 for money loaned, including interest on same; that on December 10, 1875, he loaned them $1,810, for which they agreed to pay him 8 per cent. interest per annum. This was the only cash loaned them. He testifies that A. & B. Moog owe him a small amount for salary, which was not settled by the conveyance. He does not exactly remember how much they owe him. He further testifies that he brought the money he loaned them with him from Montgomery, whence he came in 1875, and at the

time he was employed by them. He was then 18 years of age. He says he received a salary of $100 a month, and latterly $125 a month; that in 1881 he married Bernard Moog's daughter, rented a house at $18 a month, and lived economically. Just after said Moog's failure in 1885 he removed from Mobile to Texas, where he now resides. He testifies that Bernard Moog has had charge and control of the property conveyed to him; collected the rents, paid the insurance and taxes out of the rents, and remitted the balance to him. He says the taxes were paid out of the rents. He further testifies that he sold the two-fifths interest in the brick house to the wife of Bernard Moog for $1,200. The money was paid partly in cash and partly in board due her for his family; that no part of it was on time. Six hundred and twenty dollars was paid cash, and the balance was due for board. The books of A. & B. Moog having been produced on an order of the court, on examination of such parts of them as were introduced in evidence, they show no credits to Aaron Moog of the amounts or dates as testified to by either of the witnesses. They do show that at the time these witnesses say A. & B. Moog owed Aaron Moog a large amount of money the latter's firm of Moog & Weil were borrowing money from A. & B. Moog. So far as the books in evidence show, Aaron Moog's name appears but once in full on them, and that account shows debits and credits, including both cash and merchandise. Under date of April 2, 1880, it shows a balance due him of $2,606.26. Subsequent to this we find many transactions with and loans to "A. Moog" and to "A. M." But Aaron says he was not the man; that there is another A. Moog, who lives in Montgomery, and it must have been him. The books produced, however, show no such transactions either with Aaron Moog or Isadore Strauss as the witnesses have testified to, although B. Moog says the conveyances were made by and out of A. & B. Moog's books. It will be observed that Aaron Moog claims to have loaned A. & B. Moog large sums of money at different times during a period of three or four years without any arrangement with them about paying interest, and without ever charging any interest on such loans until after the expiration of four years from the first loan and about two and a half years from the last, when it is claimed a due-bill was given for the amount. But it does not appear from what time the interest was calculated, or on what particular sum or sums, or the rate charged. It will be observed that at the time he claims to have been lending money to A. & B. Moog the latter were lending money to his firm of Moog & Weil, and also to "A. Moog" and to "A. M." (The last may have been the A. Moog at Montgomery.) It will further be observed that the evidence as to the time the money was loaned by Aaron to A. & B. Moog, and where he got it, and of the circumstances under which it was loaned, is inconsistent and conflicting. The same observations may be made in regard to the claim of Isadore Strauss. Among other things it appears that during the nine years A. & B. Moog had his money they never paid him any interest on it, and it does not appear that he was ever credited with it on their books, although he says they agreed to pay him 8 per cent. interest per annum.

There are two material facts in this case on which the witnesses for the defense are agreed, namely, that the consideration recited in the deeds is the true consideration for them, and that Bernard Moog has had charge and control of the property covered by the deeds ever since their execution. On all other material points there is a hopeless inconsistency in the testimony. The irreconcilable inconsistencies and conflicts which appear in the evidence "materially impair the weight of the evidence as to the existence and validity of the indebtedness" claimed by these defendants. As was said by the court in one of the Alabama cases cited:

"The money may have been really loaned; we will not say it was not, but, vhen the connection between the parties and all the circumstances are conidered, the *bona fides* of the consideration of the sale should be shown by ·learer and more convincing proof against creditors whose debts and rights .re established."

The circumstances shown "intensify the equitable rule that in trans-.ctions such as these between near relations fuller and more convincing proof of consideration and good faith must be made than if it had been between strangers."

I think the evidence in this case too unsatisfactory to establish the fact of *bona fide* purchases. The motion to dismiss the bill is denied, and a decree will be rendered granting to the complainants the relief they pray,—to have the conveyances to defendants Aaron Moog and Isadore Strauss set aside as fraudulent and void, and to have the interest of Bernard Moog in the property therein described sold for the satisfaction of complainants' debts.

The clerk will take an account and report to the court the amounts due the complainants, respectively, with interest computed to the coming in of the report.