# Tutwiler *v.* Tuskaloosa Coal, Iron & Land Co.

### *Bill in Equity by Stockholder against Corporation.*

1. *Remedy of corporation against defaulting stockdolder; retroactive statutes.*—The statute now of force, authorizing a private corporation to sell the shares of a defaulting stockholder in satisfaction of unpaid installments (Code, 1886, § 1674), relates to the remedy merely, and therefore applies to corporations organized under the former statute (Code, 1876, § 1816), which declared a lien on the stock for unpaid installments or subscriptions, and gave an option of two remedies to enforce it—*i. e.*, (1) to consolidate the partial payments, and issue a certificate for so many paid up shares, declaring a forfeiture of the remainder; or (2) to proceed by suit to collect "what may remain unpaid of the original subscription."

[Tutwiler v. Tuskaloosa Coal, Iron and Land Co.]

2.  *Multifariousness in bill between stockholder and corporation.*—A bill filed by a stockholder against the corporation, seeking to prevent a threatened sale of his stock on account of unpaid subscriptions or installments, is between him and the corporation only, and any relief granted would be against the corporation; and if it also asks relief against fraud and wrongs perpetrated by stockholders and others on the corporation itself, alleging that the governing body have refused to interfere on request, this is asking relief for (not against) the corporation, and renders the bill multifarious; but, if the bill, in its first aspect, is substantially defective, authorizing no relief, the question of multifariousness is immaterial.

3.  *Parties to bill; corporation and officers.*—In a bill by a stockholder against a corporation, the president personally is improperly joined as a defendant, when no bad faith or other misconduct is charged against him, and no relief is prayed against him; nor can it be maintained on the ground of discovery, when a sworn answer from him is waived.

4.  *Frauds perpetrated by promoters of corporation, against subscribers of stock,* and remedies therefor; questions stated, but not decided, because not presented on the record.

5.  *Fraudulent combination and misconduct of directors, as against stockholders and corporation; remedies against* —After the organization of a corporation, if some of the corporators or directors enter into a fraudulent agreement and combination for the purchase, in the name of the corporation, of a tract of land from one of them, at a price greatly in excess of its value, and issue stock to him on the basis of this over-valuation; this is a fraud on the corporation, if not on subsequent subscribers for stock, and equitable relief against it must be sought in the name of the corporation, or of defrauded stockholders after refusal of the corporate authorities to act.

APPEAL from the Chancery Court of Tuskaloosa.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 13th March, 1889, by P. A. Tutwiler, as a stockholder in the Tuskaloosa Coal, Iron, and Land Company, a private corporation organized under the general statutes, in behalf of himself and other stockholders who might come in as parties, against the said corporation, W. C. Jemison, its president, and B. Friedman; and sought (1) to enjoin a threatened sale of the complainant's shares of stock in the corporation, on account of the non-payment of installments as called for; (2) to set aside and vacate, on the ground of fraud, a purchase by the corporation of a large tract of land from said Friedman; and (3) to have the affairs of the corporation settled and closed, its assets administered and distributed among the stockholders, and an account stated against the officers charged with the perpetration of frauds in the organization and management of the affairs of the corporation.

The defendants filed separate demurrers to the bill, the principal grounds of demurrer being, (1) multifariousness; (2) misjoinder of defendants; (3) want of equity, because the complainant did not offer in his bill to pay his unpaid

VOL. LXXXIX.

installments as called for, and because he did not allege a request and refusal to redress the wrongs complained of by the corporation itself. The chancellor sustained the several demurrers, but granted the complainant leave to amend, and refused to dismiss the bill for want of equity. The decree sustaining the demurrers is assigned as error.

THOS. R. ROULHAC, for appellant.—(1.) The threatened sale of the complainant's stock, if consummated, would destroy his *status* as a stockholder, and deprive him of the right to prosecute the bill in any aspect. The prayer for an injunction to prevent this sale is preliminary to the further relief asked, and it does not render the bill multifarious.—*Clay v. Gurley*, 62 Ala. 14; *Stone v. Life Insurance Co.*, 52 Ala. 589; *Randle v. Boyd*, 73 Ala. 282; *Bolman v. Lobman*, 74 Ala. 507. (2.) An unauthorized sale of a stockholder's shares in a private corporation, or joint-stock company, is equivalent to a conversion, or unlawful forfeiture of them; and a court of equity will set it aside, if *ultra vires*, or prevent it by injunction.—*Ormsby v. Vermont Co.*, 56 N. Y. 623; 1 Pom. Equity, §§ 37, 110, 112; *Freeman v. Harwood*, 49 Me. 195; *Land Co. v. Cockrell*, 1 C. B. N. S. 732; 1 Morawetz on Corporations, §§ 256, 257-8; *Nathan v. Tompkins*, 82 Ala. 445; *Moses v. Tompkins*, 84 Ala. 613. (3.) In this case, the corporation was organized under the general statutes, in January, 1887, and by a special legislative act approved February 26, 1887. These statutes define and limit the rights and liabilities of the parties, and also prescribe the remedies for their enforcement; and under constitutional provisions they are beyond the reach of subsequent legislative enactments. Without the aid of any statute, the corporation might maintain an action to recover unpaid subscriptions, but could not declare a forfeiture. Under former laws, of force when this corporation was created, a lien on unpaid stock was given, which might be enforced by bill in equity; or the shares subscribed for might be consolidated into a smaller number of paid up shares, thus preserving to the subscriber his *status* and rights as a stockholder.—Code, 1876, § 1816. The subsequent law, under which the sale here is threatened, entirely destroys the *status* of the stockholder, and leaves him without remedy.—Code, 1886, § 1674. The difference is radical, and would be an unauthorized invasion of vested rights. *Calef v. Hawthorne*, 2 Wall. 10; *Kent v. Quicksilver Mining*

[Tutwiler v. Tuskaloosa Coal, Iron and Land Co.]

Co., 78 N. Y. 159, 178; *People v. Crockett*, 9 Cal. 112; *McDonald v. Gold Life Ins. Co.*, 85 Ala. 401; 2 M. &. S. 53; Cook on Stockholders, §§ 123, 497; *Cotton Cases*, 22 Wall. 185; *Turner v. Teague*, 73 Ala. 556; 1 Mor. Corp., §§ 496, 274, 277, 736, 112; 19 Wend. 37. (4.) Under the allegations of the bill, the complainant is entitled to have the affairs of the corporation closed and settled, and the assets distributed among the innocent stockholders, after payment of the debts, because its organization was effected in direct violation of constitutional provisions.—Const. Ala., Art. XIV, § 6; *Dispatch Co. v. Fitzpatrick*, 83 Ala. 604; *Williams v. Evans*, 87 Ala. 725; 2 Mor. Corp., §§ 759-60. (5.) The bill contains a sufficient allegation of a request and refusal of action on the part of the corporate authorities; but such request was unnecessary, under the facts stated.—*Nathan v. Tompkins*, 82 Ala. 345; *Moses v. Tompkins*, 84 Ala. 613; *M. & C. Railroad Co. v. Woods*, 88 Ala. 630.

HARGROVE & VAN DE GRAAFF, COCHRANE & FITTS, and WOOD & WOOD, for the several appellees.—(1.) The bill is multifarious.—*Anderson v. Jones*, 68 Ala. 117; *Kinsey v. Howard*, 47 Ala. 236; *Hardin v. Swoope*, 47 Ala. 273; *McIntosh v. Alexander*, 16 Ala. 87; 18 Vesey, 80; 1 My. & Cr. 616-24; 5 Madd. 138; Story's Eq. Pl. 405, § 530; *Kennedy v. Kennedy*, 2 Ala. 574; *Clay v. Gurley*, 62 Ala. 14; *Conner v. Smith*, 74 Ala. 115. (2.) The demurrer by Friedman was properly sustained, as he was not a party against whom relief could be had, and was not interested in any controversy between the complainant and the corporation. (3.) Jemison was improperly joined as a defendant; no fraud is charged against him, and no discovery under oath is asked from him. *Norwood v. M. & C. Railroad Co.*, 72 Ala. 563; *Zelnicker v. Brigham*, 74 Ala. 598; *Watts v. Nat. Bank*, 76 Ala. 474; *McHan v. Ordway*, 76 Ala. 347. (3.) So far as the bill seeks to prevent a sale of the complainant's shares of stock, it is without equity. The corporation was formed under the general statutes, and, under constitutional provisions then of force, such corporations are subject to alteration, amendment, or repeal, by subsequent legislative enactment.—Const. 1875, Art. XIII, § 1. The former statute gave a lien on the stock, but no specific remedy for its enforcement; and the additional remedy given was, in effect, a change or rescission of the contract of subscription. The new statute gives a

[Tutwiler v. Tuskaloosa Coal, Iron and Land Co.]

simpler and easier remedy for the enforcement of an existing lien, and in no sense impairs existing remedies. The constitutional provision was intended to preserve unimpaired the existing rights and remedies of creditors, and not to allow the debtor to complain that a simpler and more efficacious remedy is given against him.—*Hart v. Ross*, 64 Ala. 96; *State v. McBryde*, 76 Ala. 57. (5.) So far as the bill seeks relief on account of the alleged facts connected with the purchase of the lands from Friedman, the bill is without equity, and shows no right in complainant to maintain the suit.—*Nathan v. Tompkins*, 82 Ala. 444; *Hawes v. Oakland*, 104 U. S. 450; *Tusk. Man. Co. v. Cox*, 68 Ala. 79; *M. & P. Line v. Waganer*, 71 Ala. 587; *Brewer v. Boston Theatre*, 104 Mass. 378; Mor. Corp. 527; 77 Ill. 226.

STONE, C. J.—On January 15, 1887, the Tuskaloosa Coal, Iron & Land Company was incorporated in Tuskaloosa county; under the general statute then in force providing for the incorporation of business corporations.—Code of 1876, Part Second, Tit. 1, ch. 1, art. 1, commencing with § 1803; Sess. Acts 1882–3, p. 5. On February 26, 1887, the act of the Alabama Legislature was approved, "to confirm the incorporation and organization of the Tuskaloosa Coal, Iron & Land Company, and to define and declare the powers of said company."—Sess. Acts, 482. This act defines the powers, and declares the purposes of said corporation.

P. A. Tutwiler, complainant in the Chancery Court, and appellant here, became the original subscriber for ninety shares of the capital stock of said corporation, of the par value of one hundred dollars each; and during the month of March, 1887, pursuant to calls made, he paid thirty per cent. of his subscription, amounting to twenty-seven hundred dollars. Calls were subsequently made for the entire stock subscription, but Tutwiler made no further payment. Being put in apparent default by demand made for payment, the stock subscribed for by Tutwiler, together with that of many others in like condition, was, by the corporation, advertised to be sold publicly for cash on March 13, 1889, the proceeds to be applied to the unpaid balance of said stock subscription. This advertisement and proposed sale were had, and proposed to be had, under section 1674 of the Code of 1886. The power of sale contained in that section is not found in the law as it existed before that Code went into operation—December 25, 1887. When Tutwiler subscribed, the mode

of enforcing payment of delinquent stock subscriptions to corporations, like the present one, will be found in section 1816, Code of 1876. The corporation was not proposing to sell under the older statute, but under the power conferred by the Code of 1886, § 1674, enacted after Tutwiler became a subscriber.

On March 13, 1889, the present bill was filed. It has two objects, and prays relief as to each. It first seeks to prevent a sale of the stock under section 1674 of the Code of 1886, under which it had been advertised to be sold. The position taken on which this relief is claimed, is, that the statute giving this remedy, having been enacted at a date subsequent to the contract by which complainant subscribed for his stock, can not be construed as retroactive, and that, hence, no valid sale can be made under the corporation's advertisement. We are not considering the merit of this contention. If it has any merit, the grievance is personal and individual to the stockholder thus circumstanced, and no other stockholder has any interest in the matter of Tutwiler's stock. A bill claiming such relief is a bill against the corporation, as the only necessary and proper party. The contention is between the stockholder and the corporation, and any relief obtained will necessarily be against the corporation.

The other feature of the bill relates to an alleged purchase by the corporation of a large body of land from Friedman, in which it is charged that Friedman, who was a stockholder and director of the company, defrauded the corporation. Primarily, relief of this kind must be sought by the corporation as complainant, for it only in its corporate capacity is the legal sufferer. For such an injury, the stockholder, as such, has not *prima facie* any legal cause of action, because he has suffered no individual grievance. In one category, a stockholder, or any number of stockholders, may become actors, and file a bill for relief in his or their own names, namely, when the governing body, being thereto requested, refuses to institute proceedings to redress an alleged wrong to the corporation.—*Tuskaloosa Manufacturing Co. v. Cox*, 68 Ala. 71; *M. & P. Line v. Waganer*, 71 Ala. 581; *Nathan v. Tompkins*, 82 Ala. 437; *Moses v. Tompkins*, 84 Ala. 613; *Dodge v. Woolsey*, 18 How. (U. S.) 331; *Hawes v. Oakland*, 104 U. S. 450; 1 Mor. Corp. § 277. In such case, although the suit is by stockholders, the relief is, to all intents, in favor of the corporation, and against some outside party. To a suit thus brought, for the wrongs com-

[Tutwiler v. Tuskaloosa Coal, Iron and Land Co.]

plained of in this case, Friedman was a necessary party defendant, being the person against whom relief, if any,' would be granted. The corporation, it is true, was a necessary party; and refusing to appear as complainant, there was no recourse left but to make it a defendant. The several and variant reliefs prayed in the two features of the bill, if there be nothing in the question to be next considered, render the bill multifarious.—3 Brick. Dig. 388, §§ 338, 342, 343; *Clay v. Gurley*, 62 Ala. 14; *Adams v. Jones*, 68 Ala. 172; *Seals v. Pheiffer*, 77 Ala. 278.

It is contended for appellant, that the first feature of his bill—that in which he seeks to prevent the sale of his stock under the advertisement—is but a stepping-stone, or condition precedent to his right to maintain the suit in its second feature; that only a stockholder can maintain such a bill, and unless he first succeeds in preventing a sale of his stock, or in having the sale, if made, set aside, he will be left without a standing in court, and his bill must fail on that account. The principle invoked is sound in a proper case. An equitable right—one which can be asserted in a court of equity—generally carries with it all the powers that are necessary to make it effective.—*Wedgeworth v. Wedgeworth*, 84 Ala. 274. We will show, further on, that that principle can not be made to benefit this case. The demurrer for multifariousness need not be further considered, as the ruling on it did no harm.

The bill makes W. C. Jemison, president of the corporation, a party defendant. It makes no charge of misconduct against him. At least, it makes no charge of bad faith, or of conduct *ultra vires*, or of any thing else, with sufficient particularity to justify making him a party defendant; and it prays no relief against him. True, it is claimed here that he is made a party for purposes of discovery. That, if true, would be no sufficient ground for making him a party. *Norwood v. M. & C. R. R. Co.*, 72 Ala. 563. But the bill expressly dispenses with a sworn answer from him. It is of the essence of a bill for discovery that it require a sworn answer. A bill like the present one can in no sense be classed as a bill for discovery.—*Zelnicker v. Brigham*, 74 Ala. 598; *Watts v. Eufaula National Bank*, 76 Ala. 474; 1 Pom. Eq. § 144. The demurrer by W. C. Jemison was rightly sustained.

We can not agree with counsel for appellant, as to the proper interpretation of section 1816 of the Code of 1876.

That section first declared a lien upon the stock of the shareholder in a corporation, such as this, for all amounts which may be due upon the subscription for stock. If the statute had proceeded no further, the lien could have been enforced by bill in chancery, as other liens are.—*Westmoreland v. Foster*, 60 Ala. 448. But the statute proceeded further, and gave to the corporation the option of pursuing one of two courses. The one was, if there had been partial payment on the stock, to proceed, after giving certain notice pointed out by the statute, "to consolidate into as many par shares as the money paid by such defaulting subscriber will amount to, and issue to him a certificate therefor." The other optional course, which the statute authorized, was, to "proceed to collect what may remain unpaid of the original subscription by suit." Electing to pursue the latter course, the corporation could have maintained an ordinary suit at law for the collection of the money, or it could have maintained a suit in chancery for the enforcement of the lien. Cook on Stock and Stockholders, § 121. And this option, or right of election, was vested in the corporation, and in its exercise the stockholder had no voice, or right of control. We have, then, the case before us of a contract entered into at a time when the law, as then in force, gave a lien, leaving the lienee to common remedies for its enforcement, and a change of the law after the making of the contract, providing another remedy, under which last statute the corporation is proceeding to make its lien available. Is this a legitimate function of legislation?

"Statutes which relate alone to the remedy, without creating, enlarging, or destroying the right, operate generally on existing causes of action, as well as those which afterwards accrue."—*Coosa Riv. St. Boat Co. v. Barclay*, 30 Ala. 120. "The legislature may alter, enlarge, modify, or confer a remedy for existing legal rights, without infringing any principle of the constitution."—*Ib.*

The case from which we have quoted, seems to be precisely in point with the present one. And this doctrine is supported by the great current of authority.—*Ala. Life Ins. & T. Co. v. Boykin*, 38 Ala. 510; *Ex parte Pollard*, 40 Ala. 77; *Ogden v. Saunders*, 12 Wheat. 401; Cooley Cons. Lim. (5th Ed.), top pp. 348, 443-4.

The advertisement for the sale was dated March 2, 1889. Section 10 of the Code of 1886, as amended by act approved February 28, 1889—Sess. Acts, 104—does not affect this question.

[Tutwiler v. Tuskaloosa Coal, Iron and Land Co.]

The bill, so far as it seeks to prevent, or to vacate the threatened sale of the stock, is without equity.    This renders the question of multifariousness immaterial.

As we understand the argument of counsel, it seeks to make the alleged fraud in the sale and purchase of the Friedman land a vitiating factor in the very inception and organization of the corporation, and, on that account, to dissolve the corporation, hold the perpetrators to personal account, and administer the assets of the attempted incorporation for the benefit of the sufferers.

If the projectors of a business corporation were by fraudulent or covinous pre-arrangement to get up a scheme and procure its incorporation, upon an agreement that property of one or more of its promoters should constitute the capital of the corporation in whole or in part, and at an appraisement palpably in excess of its value; and if such scheme be so far consummated as to mislead and deceive strangers who purchase stock in ignorance of such pre-arrangement, and of such excessive valuation, we will not say such deluded stockholders would be without redress.    Nor will we say that stock issued to the seller of such overvalued property, as the consideration, or part consideration of its purchase, conforms to the letter or spirit of the Constitution, Art. XIV, § 6, which declares, "No corporation shall issue stock or bonds except for money, labor done, or money or property actually received."—*Dispatch Co. v. Fitzpatrick*, 83 Ala. 604; *Williams v. Evans*, 87 Ala. 725.    And we will not say that a stranger who has been thus deluded in the purchase of stock and the payment of his money in ignorance of the fraud, may not file a bill and have the transaction cancelled, even if the disruption of the corporation itself be the consequence.    Nor will we say, if such stockholder has paid money under such circumstances, the fact of the sale of his stock for unpaid calls will destroy his *status* as a complainant.    And it would seem to follow that, in such case, no previous attempt need be made to obtain redress through the governing body of the corporation, if any relief can be obtained.    Such suit would be an attack on the rightful existence of the corporation itself.    These questions we do not and need not decide, for the bill makes no such case.

The bill in this case, as we have stated, was filed March 13, 1889.    It does not state when the purchase from Friedman was made.    The plain implication from the averments is, that the contract of purchase was entered into after the

organization was organized, for it charges that Friedman was a director when he made the sale. There could be no directors before incorporation, and the election of directors is one of the necessary steps taken in organization. The bill charges a very glaring fraud, but it charges it as perpetrated after incorporation, and after organization. Such fraud is, *per se*, no ground for dissolving the corporation. The vacation of such a transaction, for the fraud, is a proceeding by the corporation; or, if it, on proper request, refuse to take steps to procure a rescission of the contract, then by some one or more of the stockholders. Brought in either form, the suit is for the benefit of the corporation, as an existing artificial person, not for its dissolution. Only a stockholder or stockholders can maintain such a suit, the corporation refusing to sue; and to this end it was and is essential that Tutwiler maintain his *status* as a stockholder. Ceasing to be such, his suit, on the case made by his bill, must fail.

The rule is settled in this State, in accordance with the general doctrine on the subject, that before a stockholder, or any number of stockholders, can maintain a suit like the present one, every reasonable effort must be made to have suit instituted by the governing body of the corporation. The bill does not inform us how many directors constituted the board of the defendant corporation. The law permitted organization with not less than three, nor more than nine directors. If the averments of the bill be true, two of the directors, Friedman and another, were concerned in the fraud, and benefitted by its perpetration, while, as the result of the transaction, Friedman became the owner of one hundred and nine thousand dollars of the capital stock. The bill charges that complainant "has applied to the said company, through its president, to institute proper proceedings to set aside and annul said purchase, but it has failed and refused to do so." Under the averments of the present bill, we hold a sufficient excuse is shown to authorize stockholders to institute the suit.

Framed as the present bill is, to continue its prosecution, Tutwiler must continue to be a stockholder. If relief is obtained under it, that relief will be for the benefit of the corporation, and will in no sense dissolve it, or tend to do so. Should an amendment of the bill be attempted, it would be well to inquire if the proposed amendment would not seek relief so incompatible with any that could be obtained under the present bill, as to make it a new case.

[Capital City Water Co. v. National Meter Co.]

There is no error in any of the rulings prejudicial to appellant, and the decretal order of the chancellor is affirmed.

SOMERVILLE, J., not sitting.