McGRAW v. WOODS et al.

(Circuit Court, D. West Virginia. August 3, 1899.)

EQUITY PLEADING—BILL—ALTERNATIVE PRAYERS.

Under the rule that a bill may be framed with a double aspect with prayers for alternative relief, when such relief is founded on the same facts, and is in response to the allegations of the bill, a bill is not demurrable which, after setting out the facts relating to a sale of land by defendant under a mortgage, prays that such sale be set aside as illegal, or, if adjudged legal, that an agreement made by defendant to resell the land to complainant after defendant's purchase at the foreclosure sale be enforced.

In Equity. On demurrer to bill.

Simms & Enslow and Ambler & McCluer, for complainant.

Smith D. Turner, for defendants.

JACKSON, District Judge. The bill in this cause alleges: That on the 12th day of July, 1897, the defendant Woods conveyed 1,000 acres of land in Pocahontas county, in this state, to the plaintiff, McGraw. That the consideration for the land was $8,500, one-third of which consideration was cash in hand, and the balance of the purchase money was divided into two equal installments, payable in 6 and 12 months, with interest from date. That the deferred payments were secured by a deed of trust on the land. The cash payment was made, and the first note being the second payment was also paid, and after the second note—being the second deferred payment—fell due, McGraw having failed to pay it at maturity, Woods caused the lands to be advertised for sale in the Pocahontas Times, a weekly newspaper, at Marlinton, in said county, on the 13th day of August, 1898, to satisfy the last payment for the purchase money due on the land. That at the sale which took place under the deed of trust, Woods, the holder and owner of the note, amounting to $2,833.33, became the purchaser of the land for the sum of $3,045. That on the day of sale, and shortly thereafter, Woods executed the following paper:

"I agree that John T. McGraw may have ten days in which to repay me the purchase money of land and two hundred and fifty dollars in full costs, etc., and on payment of which I will resell land to him or cancel this sale to-day, and all trust deeds on said tract for my benefit.

"August 13, 1898. [Signed] Samuel B. Woods."

The bill further alleges that before the sale was completed by the trustee the plaintiff caused to be tendered by the Grafton Bank of Grafton, W. Va., through one of the banks of the town of Charlottesville, Va., the home of the said Woods and of the said trustee, to the said Samuel B. Woods, the defendant, the full amount of the balance due upon the purchase money of said land, with interest and costs up to that date; and that afterwards, within 10 days from the day of sale, he caused to be tendered in the same manner to the said Samuel B. Woods the full amount of $3,295, which he declined and refused to accept; that the said McGraw has always been ready and willing and anxious to carry into effect his contract of August 13, 1898. The bill also alleges that the pretended sale made by the trustee was not in compliance with the terms and provisions of the statute of West Virginia regulating sales made under deeds of trust. It also appears that McGraw had sold the land to the Greenbrier River Lumber Company prior to the sale under the deed of trust, and executed his deed for the same. It is not necessary to notice the other allegations of the bill upon a demurrer to it. It is insisted by the defendant that, the plaintiff having parted with his title, and being out of possession of the land conveyed, he cannot maintain a bill to quiet title. I do not understand that the scope of this bill is for any such purpose. It is true that it is framed with a double aspect with alternative prayers, but the facts

set out in the bill as the foundation for relief are the same. It is unnecessary to discuss upon a demurrer the question whether the sale was made according to the terms and provisions of the statute of West Virginia. That question is strictly one which arises upon the merits of the controversy.

The real question to be now considered is whether a contract entered into between Woods and McGraw on the 13th day of August, immediately after the sale, can be enforced by McGraw. This contract provides for the reconveyance of the land by Woods upon the payment of the note for which the land was sold, with $250 added to cover costs and expenses. It was a new contract, entered into between the parties, by which Woods agreed to convey the land sold under the deed of trust to McGraw for a certain consideration, which did not in any wise involve the original contract between McGraw and Woods, but was a separate and distinct contract which McGraw and Woods had a right to make without any regard to the previous contract between them, and without any reference to the fact that McGraw had sold the property to the Greenbrier River Lumber Company. Under the terms and provisions of this contract the Greenbrier River Lumber Company is not a necessary party to the suit. If McGraw acquired the title to this land under the second contract with Woods, that company could unquestionably compel him, if it became necessary, to convey this newly-acquired title to them. It is a matter of no moment to Woods what the purpose or object of McGraw was in entering into this new contract with him, whether it was to quiet title, or whether it was to set up title in his own name against the Greenbrier River Lumber Company. That is a matter entirely between McGraw and the Greenbrier River Lumber Company. If the Greenbrier River Lumber Company had filed a bill to remove this cloud upon its title, of course it would be necessary for it to have possession, as well as the title, but the contract between Woods and McGraw on the 13th of August is a contract to resell the land or cancel the sale under the deed of trust. Upon this contract the bill is mainly founded, and it seems to me that the bill has not two separate and distinct objects inconsistent with each other in view. The two prayers of the bill are: First, that the pretended sale by the trustee be set aside; second, in the event that the court is of the opinion that this prayer for relief could not be granted, then that the said Woods be required to convey the land according to his agreement of August 13, 1898. They are not inconsistent or incompatible with each other, and they are alternative prayers founded upon the same facts, relating to the same subject-matter in controversy. It is a well-settled principle of equity that a bill may be framed with a double aspect with prayers for alternative relief, but the relief sought must be founded upon the same facts, and must be in response to the allegations of the bill. Shields v. Barrow, 17 How. 130; Hardin v. Boyd, 113 U. S. 756, 5 Sup. Ct. 771; Maynard v. Tilden, 28 Fed. 703; Fisher v. Moog, 39 Fed. 667. For the reasons assigned, the demurrer is overruled.